UNITED STATES, Appellee,

v.

Private E–1 Garry L. CRUMB, SSN
280–56–5624, United States
Army, Appellant.

CM 438578.

U. S. Army Court of Military Review.

4 Sept. 1980.

Colonel Edward S. Adamkewicz, Jr., JAGC, Lieutenant Colonel John F. Lymburner, JAGC, Major Grifton E. Carden, JAGC, and Captain Dennis E. Brower, JAGC, were on the pleadings for appellant.

Colonel R. R. Boller, JAGC, Major Ted B. Borek, JAGC, Captain Stephen D. Smith, JAGC, and Captain Karen S. Gillett, JAGC, were on the pleadings for appellee.

Before JONES, GARN and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

GARN, Judge:

The appellant was convicted by the members of a general court–martial of assault consummated by a battery, and aggravated assault, in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928. His approved sentence includes a bad–conduct discharge, confinement at hard labor for three years, and forfeiture of all his pay and allowances.

The government's theory as to the facts of the case is basically simple. According to that theory the appellant, accompanied by about six companions, encountered a servicewoman, Private Nanry, and her two male escorts. The appellant grasped Private Nanry's arm in an offensive manner, and thereafter joined his companions in assaulting Private Nanry's companions in an aggravated manner.

Although the evidence was sufficient to sustain the government's theory, and the findings of guilt, the evidence can hardly be characterized as overwhelmingly favorable to the prosecution's position. No one could identify the appellant as a participant in the assaults on Private Nanry's escorts. The government's contention that the appellant participated in those assaults is based on the evidence tending to show that the appellant was part of the group of five to seven individuals that eventually assaulted Private Nanry's escorts, Private Nanry's testimony that the appellant went in the direction of the altercation when the fight began, and the testimony of a lieutenant, whose aid Private Nanry enlisted, that it appeared to him that all of the five to seven persons in the vicinity of the aggravated assault victims were participating in the assaults when his attention was first directed toward the fight. Evidence tending to detract from the prosecution's position included testimony that there had been up to thirteen persons in the vicinity of the assault victims when the altercation began[1] and testimony that a considerable period of time elapsed between the beginning of the

---

1. Both victims of the aggravated assault acknowledged stating, prior to trial, that they initially encountered nine to thirteen persons. Both testified that only about five to seven persons assaulted them. Only one of the victims attempted to explain the apparent discrepancy; he testified that there were two groups and "the other guys wasn't [sic] in on it."

altercations and the lieutenant's observation of it.[2]

Trial defense counsel included in his pre-findings argument to the members of the court–martial contentions that the evidence suggested fair and rational hypotheses consistent with innocence. Among the hypotheses he suggested was the possibility that the appellant, as well as others, may have left the vicinity of the altercation shortly after it began, and not participated in the aggravated assaults.

Prior to making his argument, trial defense counsel objected to the instructions he anticipated the military judge would give regarding the meaning of reasonable doubt, and requested that his exposition of the meaning of reasonable doubt he conveyed to the members instead. The military judge gave the instructions to which the defense objected, and refused to give the instructions requested by the defense. The issue is whether the military judge thereby erred and materially prejudiced a substantial right of the appellant.

The instructions given, over objection, were:

By reasonable doubt is intended not a fanciful or an ingenious doubt or conjecture, but substantial, honest, conscientious doubt suggested by the material evidence or the lack of it in the case. It is an honest, substantial misgiving generated by insufficiency of proof of guilt. Proof beyond a reasonable doubt means proof to a moral certainty although not necessarily to an absolute or mathematical certainty. If you have an abiding conviction of the accused's guilt such as you would be willing to act upon in the more weighty and important matters pertaining to your own affairs, then you have no reasonable doubt. The rule as to reasonable doubt extends to every element of each offense, although each particular fact advanced by the prosecution which does not constitute an element need not be established beyond a reasonable doubt. However, if, on the whole evidence, you are satisfied beyond a reasonable doubt of the truth of each and every element of any offense, then you should find the accused guilty of that offense.[3]

The instructions requested by the defense, which the military judge refused to give, were:

A "reasonable doubt" is just what the words imply, that is, a doubt founded in reason arising from the evidence, or from a lack of it, after consideration of all of the evidence. A "reasonable doubt" is not a fanciful or fictitious doubt, since such doubts can be raised about anything and everything in the human experience. Rarely, if ever, can anything be proved to an absolute or mathematical certainty, and such a burden is not required of the government here. Rather, a "reasonable doubt" is a doubt which would cause a reasonably prudent person to hesitate to act in the more important and weighty of his own personal affairs.

In considering the evidence in this case, before you may vote for a finding of guilty, you must be convinced to a moral certainty that the evidence is such as to exclude every fair and rational hypothesis or theory of innocence. If you are not so convinced, then the presumption of the accused's innocence must prevail, and it is your duty to find the accused not guilty. The rule as to reasonable doubt extends to every element of each offense. That means that the Government must prove beyond a reasonable doubt each and every element of an offense before you may vote for a finding of guilty as to that offense.

---

2. Both victims testified that the aggravated assaults lasted ten to fifteen minutes. While we recognize that the duration of their being punched and kicked probably seemed to them longer than it was, their estimates indicate the assaults lasted more than a few seconds. Also, Private Nanry testified that she *walked* to a phone booth where she found the lieutenant

and the lieutenant estimated the distance between the phone booth and the fight to have been fifty to one hundred meters.

3. The military judge's instructions were the "standard" instructions recommended in paragraph 2–4, Department of Army Pamphlet 27–9, Military Judges' Guide, 19 May 1969.

In support of his position the appellant's trial defense counsel argued that use of the word "substantial" in describing reasonable doubt could be misleading, and that several courts, including the Supreme Court, had criticized defining reasonable doubt as a substantial doubt· he argued that his proposed "hesitancy to act", instead of the "willingness to act", explication was preferred by the Supreme Court and federal courts of appeals; finally, he argued that his requested "exclude every fair and rational hypothesis or theory of innocence" instruction was a paraphrase of part of the definition of reasonable doubt set forth in paragraph 74 of the Manual for Courts–Martial, United States, 1969 (Revised edition), and should be given to provide a more complete understanding of the concept of reasonable doubt. Trial counsel responded that the instructions ultimately given were proper and, without indicating which part or how, argued that the instructions proposed by the defense would increase the prosecution's burden beyond the requirements of law. The military judge expressed his agreement with trial counsel and rejected the defense's requests and objections without any further explanation.

■ The due process provisions of the Constitution require proof beyond a reasonable doubt for conviction of a crime. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Reasonable doubt is not a legal term of art, and attempts to explain the meaning of reasonable doubt can be difficult and confusing.

> Because of the very commonness of the words [reasonable doubt], the straining for making the clear more clear has the trap of producing complexity and consequent confusion. That this difficulty may be surmounted is evidenced by the attempts which have been approved, although the language of approval has frequently implicitly suggested the difficulties of articulation. (*United States v. Lawson*, 507 F.2d 433 (7th Cir. 1974), at 442).

In *United States v. Soukup*, 2 U.S.C.M.A. 141, 7 C.M.R. 17 (1953), the Court of Military Appeals held that, in the absence of a defense request, the law officer had no duty to define reasonable doubt. In *United States v. Offley*, 3 U.S.C.M.A. 276, 12 C.M.R. 32 (1953), however, that Court held that the law officer abused his discretion when he refused a defense request for an instruction expanding on the meaning of reasonable doubt when the trial defense counsel submitted appropriate language to satisfy the request.

This case involves, with respect to defining or explaining the meaning of reasonable doubt; an objection to a word (substantial); an objection to an illustrative explanation coupled with a request for an alternative explanation ("hesitate to act" rather than "willing to act"); and a request for a further exposition (evidence must exclude every fair and rational hypothesis or theory of innocence). We will discuss those objections and requests seriatim.

I

■ Many words have various definitions, and the applicable definition must be gleaned from the context in which the word is used. Among the various definitions of the word substantial are: having substance; not illusive; real; considerable; and large. A doubt, to be reasonable, should be real, as opposed to illusive, but certainly need not be considerable or large. The military judge should have deleted the word from his instructions when defense counsel objected and pointed out that it is potentially misleading. However, in the context of the military judge's instructions, the word substantial in both instances has an acceptable meaning, *viz.*, real and honest as opposed to illusive or contrived. Moreover, although there are many court opinions criticizing, if not decrying, use of the word substantial in attempting to amplify the meaning of reasonable doubt,[4] apparently no court has re-

---

4. *See Taylor v. Kentucky*, 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978) and cases cited therein; *see also e. g., United States v.* Rodriguez, 585 F.2d 1234 (5th Cir. 1978); and *United States v. Atkins*, 487 F.2d 257 (8th Cir. 1973).

versed a conviction solely because that word was used in instructing on the meaning of that term. *Young v. Wyrick,* 451 F.Supp. 576 (W.D.Mo.1978).[5]

The Court of Military Appeals recently addressed use of the word substantial in a case in which the instructions were essentially identical to the instructions given in this case. *United States v. Salley,* 9 M.J. 189 (C.M.A.1980). The Court noted, as we have, that the word "is susceptible to an inoffensive interpretation", (*id.* at 193), but concluded that, because it is subject to improper interpretation and is confusing, the word should not be used in instructions attempting to explain the meaning of reasonable doubt. Because trial defense counsel had not objected to the instructions incorporating the word, coupled with its proper connotation in context, and the length of time the questioned instruction had been used without criticism by military appellate courts, the Court held there was no reversible error in *Salley.* In this case, however, trial defense counsel did object, and there are other issues to address, including the relationship between the nature and weight of the evidence and the instructions.

## II

■ Trial defense counsel's contention that the Supreme Court and federal courts of appeals have indicated an aversion to the "willingness to act" and a preference for the "hesitation to act" phraseology was correct. The development of the aversion and preference, however, is somewhat enigmatic.

In *Hopt v. Utah,* 120 U.S. 430, 439, 7 S.Ct. 614, 618, 30 L.Ed. 708 (1887), the Supreme Court concluded that instructions including the following explanation of the meaning of reasonable doubt were not prejudicially erroneous:

[I]f after [an] impartial comparison and consideration of all the evidence, you can truthfully say that you have an abiding conviction of the defendant's guilt, such as you would be willing to act upon in the more weighty and important matters relating to your own affairs, you have no reasonable doubt.[6]

In *Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), however, without even citing *Hopt,* the Supreme Court indicated a preference for the "hesitate to act" rather than the "willing to act" phraseology in relating weighty and important personal affairs to the concept of reasonable doubt.[7] Even though the Supreme Court's expressed preference for the "hesitate to act" phraseology was dicta and apparently given little thought by the Court in *Holland, supra,* federal circuit courts of appeals effectively have interpreted *Hol-*

---

**5.** Cases involving issues arising out of reasonable doubt instructions have limited applicability to this case for several reasons. Many of the cases turned on effective waivers by failures to object to or request instructions; the weight of the evidence of guilt in a particular case was often an important, if not determinative, basis for affirming a conviction; and, excepting *United States v. Salley,* 9 M.J. 189 (C.M.A.1980), in opinions in which the reasonable doubt instructions given were set forth, the instructions regarding the meaning of reasonable doubt were significantly different from the instructions in this case.

**6.** It is interesting to note, in view of the requested instruction in this case, that the Court in *Hopt,* also made the following observation:
[I]f [the "willing to act" portion of the instructions] were open to criticism it could not have misled the jury, when considered in connection with the further charge, that if they could reconcile the evidence with any

reasonable hypothesis consistent with the defendant's innocence they should do so, and in that case find him not guilty.
*Hopt v. Utah,* 120 U.S. 430, 441, 7 S.Ct. 614, 619, 30 L.Ed. 708 (1887). The instructions explaining the meaning of reasonable doubt in *Hopt* were more balanced than the instructions in this case.

**7.** The opinion in the case cited by the Court in *Holland, Bishop v. United States,* 107 F.2d 297 (D.C.Cir.1939), did not even acknowledge, let alone discuss, the different "willing to act" phraseology. Moreover, in *Holland* the instruction given was that reasonable doubt is "the kind of doubt ... which you folks in the more serious and important affairs of your own lives might be willing to act upon." *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954). That exposition was inane and better illustrated when reasonable doubt might be overcome rather than what it is.

*land* as holding that the "willing to act" phraseology is erroneous and, if an instruction relating weighty and important personal affairs to reasonable doubt is given, the "hesitate to act" phraseology should be employed.[8]

In *Scurry v. United States*, 347 F.2d 468, 470 (D.C.Cir. 1965) the court made the following criticism of the "willing to act" illustration:

> Being convinced beyond a reasonable doubt cannot be equated with being willing to act in the more weighty and important matters in your own affairs. A prudent person called upon to act in an important business or family matter would certainly gravely weigh the often neatly balanced considerations and risks tending in both directions. But, in making and acting on a judgment after so doing, such a person would not necessarily be convinced beyond a reasonable doubt that he had made the right judgment. Human experience, unfortunately, is to the contrary.
>
> The jury on the other hand is prohibited from convicting unless it can say that beyond a reasonable doubt the defendant is guilty as charged. Thus there is a substantial difference between a juror's verdict of guilt beyond a reasonable doubt and a person making a judgment in a matter of personal importance to him. To equate the two in the juror's mind is to deny the defendant the benefit of a reasonable doubt.

We have been unable to find any court opinion setting forth a reasoned basis for preferring the "hesitate to act" illustration. In our view, the "hesitate to act" illustration is subject to criticism similar to the criticism of the "willing to act" illustration, as expressed in *Scurry, supra,* and the military judge did not err in declining to employ the requested "hesitate to act" illustration in his instructions. Conceptually, and within the ken of human experience, people hesitate to act, before acting, with respect to important personal matters, even though, after careful reflection, they may not have any reasonable doubt that their ultimate decision to act is the proper course. The basic problem is that people normally do not make decisions by employing the proof beyond a reasonable doubt standard. Comparing the two is not very helpful and, as indicated in the court's opinion in *Scurry, supra,* could be misleading. We suggest, therefore, that in the future any comparisons between the bases on which decisions relating to important personal matters are made and the standard of proof beyond a reasonable doubt not be included in military judges' instructions.

In any event, no case has been found, and it appears that there are none, *see United States v. Mars,* 551 F.2d 711 (6th Cir. 1977), in which a conviction has been reversed solely on the basis of an instruction including the "willing to act" phraseology. We do not believe the appellant was harmed by the "willing to act" illustration being included in the instructions, although it would have been preferable, particularly in view of the objection, had that part of the instructions been deleted.

### III

The requested, and rejected, instructions that to warrant a finding beyond a reasonable doubt the evidence must be such as to exclude every fair and rationale hypothesis of innocence is essentially a paraphrasing of part of the explanation of the meaning of reasonable doubt set forth in paragraph 74a (3) of the Manual for Courts–Martial, U.S., 1969 (Revised edition).[9] We see nothing

---

**8.** *United States v. Baptiste,* 608 F.2d 666 (5th Cir. 1979); *United States v. Tobin,* 576 F.2d 687 (5th Cir. 1978); *Dunn v. Perrin,* 570 F.2d 21 (1st Cir. 1978); *United States v. Jensen,* 561 F.2d 1297 (8th Cir. 1977); *United States v. Mars,* 551 F.2d 711 (6th Cir. 1977); *United States v. Robinson,* 546 F.2d 309 (9th Cir. 1976); *United States v. Magnano,* 543 F.2d 431 (2d Cir. 1976); *United States v. Leaphart,* 513 F.2d 747 (10th Cir. 1975); *United States v. Emalfarb,* 484 F.2d 787 (7th Cir. 1973); *United States v. Restaino,* 369 F.2d 544 (3rd Cir. 1966); *Scurry v. United States,* 347 F.2d 468 (D.C.Cir. 1965).

**9.** Paragraph 74a (3), Manual for Courts–Martial, United States, 1969 (Revised edition), provides, in pertinent part, "that the proof must be

erroneous about that part of the requested instruction.

In *United States v. Mason*, 8 U.S.C.M.A. 329, 24 C.M.R. 139 (1957), trial defense counsel argued that the prosecution's circumstantial evidence case required proof excluding every reasonable hypothesis of innocence, and that that standard is "stronger" than the usual proof beyond a reasonable doubt standard. He requested an instruction on circumstantial evidence, apparently related to the positions he submitted in his argument. The Court of Military Appeals pointed out that the argument that a "stronger" standard of proof must be met when circumstantial evidence is presented was wrong, but held that the law officer erred in failing to relate his instructions concerning circumstantial evidence to the standards of reasonable doubt. Trial defense counsel in this case specifically requested such an instruction and accompanied his request with proposed instructions including language specifically suited to fulfill his request. Moreover the requested instruction was clearly related to an important defense theory: *i. e.*, the evidence did not preclude fair and rational hypotheses inconsistent with guilt. The following observations of the Court of Military Appeals are apropos:

> Whether a judicial officer has abused his authority as to a matter resting within the exercise of sound discretion is ever a question fraught with difficulty. Appellate tribunals—remote in time and place from the trial, and faced only with the bare pages of a frigid record—labor under a severe handicap. However, in the instant case, defense counsel had not only requested that the [military judge] expand on the meaning of reasonable doubt, but in addition had submitted a proposed instruction which would serve to satisfy the request .... Additional instructions of this nature impose but a slight burden on the [military judge], but may be of incalculable benefit to the accused.

Therefore, when a specific request for clarifying instructions is made–and particularly when accompanied by suggested language–we think it a clear abuse of discretion on the part of the [military judge] to reject the request. Indeed he need not use the particular instruction submitted, so long as the one he does give complies with the substance of the request. *United States v. Offley*, 3 U.S.C. M.A. 276, 280, 12 C.M.R. 32, 36 (1953).

## IV

■ In this case, the military judge's refusal to provide the requested "fair and rational hypothesis" instruction, in either the requested or. *Manual* language, coupled with his giving instructions, despite objection and reasoned arguments that accurately pointed out that certain words and phrases in those instructions could be misleading, amounted to an abuse of discretion. *See United States v. Hamill*, 21 C.M.R. 873 (A.F.B.R.1956). Often we might be convinced that such an abuse was harmless. *See United States v. Lasseter*, 24 C.M.R. 372 (A.B.R.1957). In this case, however, there is a fair risk of harm.

We have considered, and found lacking merit, the appellant's arguments that the pre–trial investigation was defective and that the evidence of guilt is insufficient. The remaining assigned errors are moot as a result of our decision.[10]

The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

JONES, Senior Judge, concurring:

This case presents an issue that the Court of Military Appeals did not have to face in *United States v. Salley*, 9 M.J. 189 (C.M.A. 1980), with regard to the reasonable doubt instruction. In that case, where there was no objection to the instruction and no re-

---

such as to exclude not every hypothesis or possibility of innocence but any fair and rational hypothesis except that of guilt...."

10. Nevertheless, Judge. Lewis and I agree with Senior Judge Jones' salutary observations about those issues.

quest for clarification, the Court of Military Appeals condemned the instructional reference to "substantial doubt" and stated it should be avoided in the future. The Court, recognizing in its precedents and in those of the federal courts, a "reluctance to reverse because of the use of the instruction--at least absent an objection by defense counsel or a request for clarification" stated that they could not "conclude that the appellant was prejudiced by the reference to substantial doubt."

In the instant case the trial defense counsel objected to the standard instruction which used the word "substantial", proposing a substitute instruction that avoided the word. He also proposed a definition of reasonable doubt based on paragraph 74a (3), Manual for Courts–Martial, United States, 1969 (Revised edition), to the effect that the evidence must be such as to "exclude every fair and reasonable hypothesis or theory of innocence." Therefore, I agree with Judge Garn that on the state of the evidence here the military judge erred to the prejudice of the appellant in giving the objectionable instruction and in not giving the requested instruction. *United States v. Mason*, 8 U.S.C.M.A. 329, 24 C.M.R. 139 (1957); *United States v. Offley*, 3 U.S.C. M.A. 276, 12 C.M.R. 32 (1953).

I believe there are several other errors that warrant discussion and, as will be indicated, corrective action upon any rehearing.

I

█ The appellant renews his attack first raised below on the procedure used in selecting and replacing court members. The procedure utilized at Fort Lewis, as indicated from the evidence in the hearing on the motion, was as follows: The Staff Judge Advocate requested nominees for court membership from the major subordinate commands. The commands were to use the criteria contained in Article 25(d)(2), Uniform Code of Military Justice, 10 U.S.C. § 825(d)(2), in making their nominations. The Chief Trial Counsel and Chief, Criminal

Law section in the Staff Judge Advocate's office then, using the Form 2s and 2–1s, "culled through" the list of nominees and made recommendation for certain members to be on certain panels (two general court–martial panels and three special court–martial panels). The Staff Judge Advocate submitted these recommended lists to the convening authority who, using the criteria of Article 25(d)(2), UCMJ, approved the lists as constituted. It is clear that he was aware that he could make any changes he deemed necessary.[1] When a member was excused by the convening authority, either permanently or for one or more cases only, it became the duty of the trial counsel to nominate a replacement. In this case the replacements were obtained from three sources: (1) from the membership of another panel previously selected, (2) from a nomination by the command of a member being excused, and (3) from the local organizational and staffing chart listing officers. The trial counsel used availability as his sole criterion in making recommendations but the convening authority again used the criteria of Article 25(d)(2), UCMJ, in making his personal selection. The convening authority also personally designated the panel to which this case was to be referred.

█ It is obvious that the Staff Judge Advocate and his assistants at Fort Lewis were aware of the requirement of *United States v. Ryan*, 5 M.J. 97 (C.M.A.1978), and *United States v. Kemp*, 22 U.S.C.M.A. 152, 46 C.M.R. 152 (1973), for they scrupulously insured that the convening authority made all selection, replacement, and referral decisions personally. The use of the convening authority's staff and subordinate commanders in compiling nominations and making recommendations was also necessary and proper. By involving the Chief Trial Counsel in the "culling" process and the Trial Counsel in the replacement scheme, however, the authorities needlessly injected an appearance of evil into the procedure that should have been avoided. There is no place for the use of partisan government

---

1. Although submission of only the precise number of names to be selected is not error, I believe it better practice to submit the entire list of nominees.

advocates in the sensitive area of selection of court members. The practice should be terminated forthwith. It is only through the searching examination at trial of two of the participants in the procedure that I am satisfied that the selection process was fair and without prejudice to the appellant.[2]

## II

■ The appellant contends that the Article 32 investigation was defective because the investigating officer without notice to or the presence of the defense counsel received advice from three different officers in violation of the principles announced in *United States v. Payne*, 3 M.J. 354 (C.M.A. 1977). The issue was litigated fully below and the military judge denied appellant's motion for a new Article 32 investigation.

The Article 32 investigating officer spoke with the Legal Advisor to the subordinate command where this case arose on several occasions. The Legal Advisor had interviewed the witnesses, reviewed the CID report, drafted the charges, recommended the appointment of the investigating officer, and advised the Summary Court–Martial convening authority. His contacts with the investigating officer concerned only procedural matters. When the investigating officer tried to bring up substantive matters, the Legal Advisor always declined to discuss them.

Substantive matters were discussed with the Chief, Criminal Law section of the Staff Judge Advocate office. The defense counsel was not notified and was not present. This was error.

The Article 32 investigating officer also spoke with the Staff Judge Advocate but this concerned only an administrative matter, his difficulty in assembling the parties for a hearing. The Staff Judge Advocate's advice was correct and in no way needed to involve the defense counsel.

Although there was a violation of *Payne*, as indicated above, the extensive questioning of the parties involved rebutted the presumption of prejudice to the accused from the *ex parte* consultation with the Chief of the Criminal Law section.[3] No new investigation was required.

## III

■ The trial defense counsel requested a verbatim transcript of the testimony of the three witnesses at the Article 32 investigation. As such a transcript was not required and one was not made, the military judge properly treated the request as one for production of the tapes. I think he erred in denying the appellant's request.

The Court of Military Appeals has long held that the *Jencks Act*[4] is applicable to courts–martial. *United States v. Jarrie*, 5 M.J. 193 (C.M.A.1978); *United States v. Albo*, 22 U.S.C.M.A. 30, 46 C.M.R. 30 (1972). The Court has not, however, applied the act to the production of the tapes of an Article 32 investigation. This Court in *United States v. Burrell*, 5 M.J. 617 (A.C.M.R.1978), did not have that question before it and therefore left the issue open. Subsequently, this Court in *United States v. Thomas* 7 M.J. 655 (A.C.M.R.1979), and the Air Force Court of Military Review in *United States v. Scott*, 6 M.J. 547 (A.F.C.M.R.1978), concluded that the *Jencks Act* applied to the testimony given at an Article 32 investigation. I believe those cases correctly resolve the issue. The judge should have required production of the tapes. Because of the disposition of the case on the instructional issue, however, it is unnecessary to determine if sanctions need be imposed.

## IV

I agree with Judge Garn that the remaining errors assigned require no discussion or

---

2. The trial counsel testified that he disliked the procedure and emphasized that he accomplished the task in a "mechanistic" way, obviously to insure there was no partisanship.

3. I reaffirm the views expressed in my concurring opinion in *United States v. Grimm*, 6 M.J.

· 890 (A.C.M.R.1978), concerning the status of the Article 32 investigating officer and the need for an adversary proceeding in order to obtain legal advice.

4. 18 U.S.C. § 3500.

corrective action. However, I want to commend counsel at the trial below and counsel before us on appeal for their work in this case. Rarely do I find a case as well litigated or as well briefed on appeal.

LEWIS, Judge, concurring:

I concur in both Senior Judge Jones' and Judge Garn's opinions.