**UNITED STATES, Appellee,**

v.

**Private E–1 Phillip E. JOHNWELL, SSN 572–98–5066 United States Army, Appellant.**

**CM 439627.**

U. S. Army Court of Military Review.

16 June 1981.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Elliot J. Clark, Jr., JAGC, and Captain James A. McAtamney, JAGC, were on the pleadings for the appellant.

Major Ted B. Borek, JAGC, Captain Rexford T. Bragaw, III, JAGC, and Captain Eugene R. Milhizer, JAGC, were on the pleadings for the appellee.

Before JONES, GARN and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

GARN, Judge:

The initial session of the appellant's trial occurred on 25 October 1979. At that session, prior to entering a plea, the appellant's trial defense counsel stated the defense wished to raise a motion relating to jurisdiction because, he asserted, the appellant's enlistment was made possible by recruiter misconduct and was, therefore, void. The military judge obviously recognized that resolution of that motion would be complex and time consuming. Because trial of the merits of the case by members was scheduled to begin within minutes of the raising of the jurisdiction issue in court, the military judge determined that resolution of that issue would be deferred until after trial on the merits. The defense did not object.

Thereafter the appellant was convicted, despite his plea of not guilty, of wrongfully selling heroin. After the members had determined a sentence the proceedings were adjourned. The sentence was not announced but was "sealed" by the military judge. At another session of the appellant's trial conducted four days later, the defense presented evidence in support of the defense position that the court-martial lacked jurisdiction because the appellant's enlistment was void. A detailed recounting of that evidence is unnecessary; in summary, it tended to show that the sergeant who had recruited the appellant, after having been made aware that the appellant had difficulty concentrating because of a head injury, had given the appellant a booklet containing questions and answers and, because a substantial number of those questions appeared in the appellant's Armed Forces Qualification Test, the sergeant's having provided the booklet materially assisted the appellant in passing the aptitude test required as part of the enlistment process.

In view of that evidence, and the Court of Military Appeals' holdings in the cases of *United States v. Russo*, 1 M.J. 134 (C.M.A. 1975) and *United States v. Little*, 1 M.J. 476 (C.M.A.1976), the appellant's trial defense counsel argued that the charges against the appellant should be dismissed. The military judge adjourned the trial session without deciding the necessity for rebuttal evidence because he was not sure that the defense evidence established misconduct by the recruiter.

The next, and final, session of the appellant's trial occurred on 28 January 1980. At that session the military judge announced that he had decided that, in view of the amendments to Article 2 of the Uniform Code of Military Justice, 10 U.S.C.A. § 802, that had become effective on 9 November 1979, it was unnecessary for him to decide whether the jurisdiction of the court-martial was affected by any misconduct by the appellant's recruiter. The military judge found that the appellant had the requisite statutory qualifications for enlistment and had voluntarily taken the oath of enlistment and, therefore, was subject to the jurisdiction of the court-martial. The military judge then opened the envelope containing the sentence worksheet and in-

formed the appellant of the sentence that had been adjudged by the members of the court-martial.[1]

## I

Before us the appellant has renewed his argument that, in view of his unrebutted evidence of his recruiter's conduct and the doctrine announced in *United States v. Russo, supra,* he was not subject to the jurisdiction of the court-martial that tried and convicted him. He also argues that the retroactive application of the amendments to Article 2, Uniform Code of Military Justice, was improper and, additionally, violated the provision of Article I, Section 9 of the Constitution prohibiting ex post facto laws. We find it unnecessary to address the appellant's first argument, and reject his retroactivity and ex post facto arguments for the reasons stated by this Court in the cases of *United States v. McDonagh,* 10 M.J. 698 (A.C.M.R.1981) and *United States v. Quintal,* 10 M.J. 532 (A.C.M.R. 1980). Even if there were not sufficient evidence to show that the appellant's initial enlistment was effective, there is sufficient evidence in the record to convince us that the appellant constructively enlisted in the United States Army and therefore was subject to the jurisdiction of the court-martial. *See United States v. Boone,* 10 M.J. 715 (A.C.M.R.1981) and *United States v. Quintal, supra.*

The appellant also argues that he was harmed by the military judge's irregular procedure of preventing the president of the court-martial from announcing the sentence as soon as it had been determined, as required by paragraph 76c, Manual for Courts-Martial, United States, 1969 (Revised edition), and by the military judge's lengthy delay in deciding the jurisdiction issue.

Deciding a motion to dismiss after trial on the merits and determination of a sentence is both unusual and contrary to the *Manual,* as asserted by the appellant. We are satisfied, however, that the military judge did not abuse his discretion in proceeding as he did. He realized that resolution of the jurisdiction issue would be complex and time consuming. The members of the court-martial, the witnesses, and the other parties necessary for resolution of the merits and, if necessary, determination of a sentence were present. Undoubtedly, the military judge had other cases to try; had he delayed trial of the merits it was likely that the trial docket for which he was responsible would have been adversely affected. Moreover, the defense acquiesced in the procedure which, had the appellant been acquitted, would have inured to the appellant's benefit.[2] The delay in announcing the sentence precluded the appellant's being confined pending resolution of the jurisdiction issue  Furthermore, permitting the sentence to be announced when the jurisdiction of the court-martial was still at issue would have been anomalous at best. We doubt that when the President promulgated the *Manual* provision that the sentence should be announced immediately, he intended it to be applied in the situation confronting the military judge in this case.

The delay in finally deciding the jurisdiction issue was lengthy. There is nothing to indicate any improper motives for the delay, however. Undoubtedly the military judge had other cases to try. If he had decided that the Government should be accorded an opportunity to present rebuttal evidence, arrangements would have had to have been made to produce a witness or

---

1. The adjudged sentence, which was approved by the convening authority, was a dishonorable discharge, confinement at hard labor for three years, forfeiture of all pay and allowances, and reduction to the grade of Private E–1.

2. One of the anomalies of the *Russo* doctrine was that often an accused attempting to avoid court-martial jurisdiction had to admit un- charged misconduct and ultimately try to show his participation in a fraudulent enlistment. *See United States v. Stone,* 8 M.J. 140 (C.M.A. 1979). We are certain that, had the appellant been acquitted, he would not have attempted to terminate his military status by trying to prove he cheated when he took his Armed Forces Qualification Test.

witnesses, probably from distant locations.[3] The amendment to Article 2 of the *Code*, which became effective eleven days after the defense presented evidence in support of the motion to dismiss, contributed to the length of the delay. When the amendment became effective the military judge was confronted with yet another complex aspect of an already complex issue. At the final session of the appellant's trial, the military judge explained that the reason for the delay was that he had several cases involving the issue of the effect of the amendment of Article 2, that he had requested briefs on the issue, and had not decided the issue until about ten days before the final session of the appellant's trial. We are satisfied that the delay in deciding the jurisdiction issue was reasonable and not harmful to any substantial rights of the appellant.[4]

■ The appellant also argues that the military judge's admitted reliance on legal arguments presented in another case in deciding the jurisdiction issue in his case was improper. We disagree. Certainly not all of a military judge's legal education is presented to him during the course of any single trial. The appellant's trial defense counsel was afforded an opportunity to, and did, argue that the military judge's analysis of the effect of Article 2 of the *Code* was incorrect.

## II

■ Finally, the appellant argues that the evidence of his guilt is insufficient and that the military judge committed prejudicial error by failing to give the defense requested instruction relating to the concept of reasonable doubt.

Some of the facts are uncontroverted and were proved beyond any doubt. A Specialist Puckett agreed with military police authorities to attempt to purchase heroin from the appellant. A Specialist Lamoreaux, a military police investigator, was assigned to accompany Specialist Puckett and observe the transaction. The two of them went to Specialist Puckett's room, where they spent the evening together waiting for the transaction to occur. The appellant came into Specialist Puckett's room and heroin was sold.

According to Specialist Lamoreaux the exchange of money for the heroin, contained in white paper packets, occurred behind a wall locker in Specialist Puckett's room. She testified she was unable to observe what transpired there for about two minutes, but then walked to a location where she could see at least the hands of Specialist Puckett and the appellant. She insisted, during searching cross examination, that she saw the appellant place white paper packets in Specialist Puckett's hand and Specialist Puckett transfer money to the appellant's hand. Specialist Puckett testified that the entire sale transaction occurred away from the locker and in full view of Specialist Lamoreaux. According to her testimony, she took four packets of heroin from the appellant's hand and, in exchange, gave the appellant one hundred dollars of her own money.[5] The appellant testified that the entire sale transaction took place out of the view of Specialist Lamoreaux and that, rather than selling any heroin to Specialist Puckett, he purchased one of five packets she had, for which he gave her twenty dollars.

We agree with the appellant's position that Specialist Puckett's credibility is ques-

---

3. The appellant's trial was in Germany. He enlisted in California.

4. The delay in announcing the sentence in this case did have the ultimate effect of delaying the beginning, and therefore the ending, of the appellant's term of confinement. In an abundance of caution, we have reduced the appellant's term of confinement by four months to obviate any possibility of harm, although neither requested nor required to do so.

5. Specialist Puckett had not been supplied with any government funds and had been instructed to attempt a credit purchase. She admitted she had extraordinary financial obligations at the time. She testified that she "thought maybe" she would be reimbursed by the government when she purchased the heroin.

tionable. We also agree with his trial defense counsel's position that Specialist Lamoreaux honestly related what she believed to be the truth. We do not agree, however, with his argument that she only thought she saw the appellant transfer heroin and receive money because that is what she expected to see. In our view, Lamoreaux actually saw what she testified she saw. In any event, to accept the appellant's version of the transaction, we would have to accept also the very unlikely premise that Specialist Puckett had the temerity to sell heroin to the appellant when she knew that a military police investigator, who could observe the transaction, was in the same room. After careful consideration of all the evidence in the case, we are satisfied that the appellant's guilt has been established beyond a reasonable doubt.

The appellant's trial defense counsel requested the following instruction relating to the meaning of reasonable doubt instead of the instruction in the *Military Judge's Guide*:

> You are instructed that in the case being considered, if there is reasonable doubt as to the guilt of the accused, the doubt shall be resolved in favor of the accused and you must acquit him. A "reasonable doubt" is what the words imply, a doubt founded in reason arising from the evidence, or from a lack of it, after consideration of all the evidence. A "reasonable doubt" is not a flimsy, fanciful, imaginative, or fictitious doubt, since such doubts can be raised about anything and everything in the human experience. Rarely, if ever, can anything be proved to an absolute or mathematical certainty, and such a burden is not required of the Government here. Rather, a "reasonable doubt" is a doubt which would cause a prudent person to hesitate to act in the more important and weighty of his own personal affairs. In considering the evidence in this case, before you may vote for a finding of guilty, you must be convinced to a moral certainty of the accused's guilt and you must be satisfied that the evidence is such as to exclude

every fair and rational hypothesis or theory of innocence. If you are not so convinced and satisfied, then it is your duty to find the accused not guilty.

The military judge denied the request, and instead gave the then "standard" instruction, *viz*:

> Now by "reasonable doubt" is intended not as [sic] a fanciful or ingenious doubt or conjecture, but substantial, honest, conscientious doubt suggested by the material evidence or the lack of material evidence in the case. It is an honest, substantial misgiving generated by the insufficiency of proof of guilt. Proof beyond reasonable doubt means proof to a moral certainty although not necessarily an absolute or mathematical certainty. If you have an abiding conviction of the accused's guilt such as you would be willing to act upon in the more weighty and important matters relating to your own affairs, then you have no reasonable doubt. The rule as to reasonable doubt extends to every element of the offense although each particular fact advanced by the prosecution, which does not constitute an element, need not be established beyond reasonable doubt. However, if, on the whole evidence the court is satisfied beyond a reasonable doubt of the truth of each and every element, the court should find the accused guilty.

At first blush, this case appears to be governed by the holdings in *United States v. Cotten*, 10 M.J. 260 (C.M.A.1981) and *United States v. Crumb*, 10 M.J. 520 (A.C. M.R.1980) in which the Court of Military Appeals and this Court reversed convictions when the military judge gave instructions virtually identical to the instructions in this case despite trial defense counsels' objections and proposal of substitute instructions virtually identical to the instructions requested in this case. There are differences, however. In *Cotten*, the military judge, in his preliminary instructions, defined reasonable doubt as a substantial doubt and thus, in the opinion of the Court of Military Appeals, "made an absolute equation of 'substantial doubt' with 'reasonable

doubt'". *Cotten* at 262. Also, trial defense counsel in that case "entered a strong objection to this equation of 'reasonable doubt' with so-called 'substantial doubt'". *Cotten* at 260. Similarly, in *Crumb*, the trial defense counsel objected to the instructions given *and* made "reasoned arguments that accurately pointed out that certain words and phrases in those instructions could be misleading...", thus calling the attention of the military judge to the precise reasons for his objection. Appellant's trial defense counsel, on the other hand, merely stated that he believed the "hesitancy to act" part of his requested instruction should be given when demanded.[6] He did not specifically object to any part of the instruction given nor express any reason that those instructions were objectionable or that his proposed substitute instructions were preferable. *Cf. United States v. Salley*, 9 M.J. 189 (C.M.A.1980) and Fed.R. Crim.P. 30.

While we do not know any of the details about the relative strength of the prosecution and defense evidence in *Cotten*, we do know that the evidence of guilt was not sufficiently persuasive to satisfy the majority of the Court of Military Appeals that the errors found in that case were harmless. We do know that in *Crumb* the prosecution's evidence, which was principally circumstantial[7], was not overwhelming. In appellant's case, after considering the instructional errors noted and all the evidence in the case, we are satisfied that the evidence of the appellant's guilt was sufficiently strong to preclude any fair risk of harm to the appellant as a result of those errors.[8]

The findings of guilty and only so much of the sentence as provides for a dishonorable discharge, confinement at hard labor for thirty-two months, forfeiture of all pay and allowances, and reduction to the grade of Private E–1 are affirmed.

Senior Judge JONES and Judge LEWIS concur.

**6.** In *Cotten*, the Court of Military Appeals stated that the "willing to act" language was erroneous and intimated that a requested instruction to the effect that reasonable doubt is a doubt that would cause a prudent person to "hesitate to act" with respect to important personal matters should have been given. We adhere to our view, expressed in *Crumb*, that the "hesitate to act" illustration is as confusing as the "willing to act" illustration, and therefore refusal to give the "hesitate to act" illustration is not error. We would not view giving the "hesitate to act" illustration to be error harmful to an accused, however, because the confusion inherent in that illustration would, on balance, favor the defense.

**7.** For that reason, the refusal to given the requested "exclude every fair and rational hypothesis or theory of innocence" instruction was more significant and harmful in *Crumb*.

**8.** In *Cotten*, the Court of Military Appeals also intimated that the instructional errors relating to the meaning of reasonable doubt were of constitutional dimension, thus requiring satisfaction beyond a reasonable doubt that the errors were harmless in order to affirm the conviction. Another panel of this Court has construed *Cotten* as establishing that standard. *United States v. Taylor*, 10 M.J. 836 (A.C.M.R. 1981). We do not agree. In *Cotten*, the constitutional error standard was not employed in expressing the court's final determination that the error was not harmless. Furthermore, if the instruction given was considered by the Court of Military Appeals to be an error of constitutional dimension, that Court would not have affirmed the conviction in *United States v. Salley*, 9 M.J. 189 (C.M.A.1980), where the same instruction was considered and determined to be confusing, but not so erroneous as to require reversal. Finally, the intimation in *Cotten* that the error might be of constitutional dimension arises from a quotation in the *Cotten* opinion, at p. 262, from the case of *United States v. Pinkney*, 551 F.2d 1241 (D.C.Cir.1976) in which a reasonable doubt instructional error was determined to be of that magnitude. In *Pinkney*, however, the trial judge had provided the jury with a lengthy illustration of the meaning of reasonable doubt which, in the opinion of the Court of Appeals, "trivialize[d]" and tended to denigrate the standard of proof required for conviction. Recently, another Court of Appeals considered the same reasonable doubt instruction given in this case, as well as in *Cotten*, *Crumb*, and *Taylor*, and held that there was no constitutional error in the instruction. *Hatheway v. Secretary of the Army*, 641 F.2d 1376 (9th Cir. 1981).