**UNITED STATES, Appellee,**

v.

**Private First Class Terrence JAMISON, SSN 177–56–0289, United States Army, Appellant.**

.CM 443577.

U.S. Army Court of Military Review.

30 May 1984.

Lieutenant Colonel William P. Heaston, JAGC, Captain Harry L. Williams, Jr., JAGC, and Captain Lawrence R. Hughes, Jr., JAGC, were on the pleadings for the appellant.

Colonel James Kucera, JAGC, Lieutenant Colonel John T. Edwards, JAGC, Lieutenant Colonel Thomas M. Curtis, JAGC, and Captain Thomas J. Benjamin, JAGC, were on the pleadings for the appellee.

Before MOUNTS, YAWN and WERNER, Appellate Military Judges.

## OPINION OF THE COURT

WERNER, Judge:

Contrary to his pleas, appellant was convicted by a court composed of members of housebreaking and robbery in violation of Article 130 and 122, Uniform Code of Military Justice, 10 U.S.C. 930 and 922. His approved sentence includes a bad-conduct discharge, confinement at hard labor for five years, total forfeitures and reduction to Private E–1.

Appellant contends, *inter alia*, that the military judge committed reversible error by failing to grant a defense motion to dismiss for lack of jurisdiction on the ground that the procedures used to select court members at Fort Lewis, Washington, were improper; by denying a defense challenge for cause against himself for acting on the motion because of his personal involvement in the establishment and implementation of those procedures during a previous tour of duty as staff judge advocate of Fort Lewis; and by failing to recuse himself after he had become a witness for the prosecution. As we agree with the appellant's last assertion, we will not address the remainder.

I

Prior to arraignment, the trial defense counsel conducted the following *voir dire* of the military judge in order to determine whether there was a basis to challenge him for cause:

DC: Your Honor, I would like to inquire further, if I may?

MJ: Certainly.

DC: We anticipate at this time making a motion in the nature of a motion to dismiss the charges for lack of jurisdiction, based on an improper selection of the jury in this case by the convening authority. As authority for this motion, we tend to use the cases of *United States versus Cherry*[, 14 M.J. 251 (C.M.A.1982),] and *United States versus Crumb*[, 10 M.J. 520 (A.C.M.R.1980)]. And as I understand it—first of all, I should ask the military judge, was the military judge ever a Staff Judge Advocate at Fort Lewis?

MJ: Yes, I was, from 1976 until 1981.

DC: During the time that you were the Staff Judge Advocate, was the case *United States versus Crumb* tried?

MJ: Yes.

DC: And was that case tried by a court set up under a system devised by you? I

mean was the jury selection, the court selection set-up made through a system devised by you?

MJ: I don't believe that I devised a system. I believe it was devised by the Chief of Military Justice at that time.

DC: And during the time that you were the Staff Judge Advocate, was the case of *United States versus Donald Cherry* tried?

MJ: I don't recall.

DC: The information I have from the Court of Military Review is that that case was—arose—or was tried, rather, from 29 May 1979 to 26 June 1979.

MJ: Well, I would have been the Staff Judge [A]dvocate, if I wasn't on leave or gone or something. I don't recall whether or not I was the SJA when the case was tried. I recall the *Crumb* case. I testified in the *Crumb* case.

DC: Well, the defense's position is that because of the system for jury selection which is, we contend, enforced at Fort Lewis, and that this court was selected under that system, since that was devised by the Chief of Military Justice while you were the Staff Judge Advocate, we feel that—that basically it would be prejudicial, or unfair, to Private Jamison for you to sit as military judge in this case.

MJ: Well, first of all, I don't even know what system is being used in selecting a jury here. I feel that I have no bias or prejudice one way or another with respect to whatever system is being used at the present time, and I haven't been a Staff Judge Advocate for over a year and a half. I don't feel that I'm disqualified to rule on a strictly legal motion, based on the facts and circumstances as they exist here at Fort Lewis. So if you are challenging me for cause, I'll deny the challenge for cause.

*United States v. Crumb, supra,* was tried at Fort Lewis and reversed on appeal because of instructional error. In a concurring opinion joined by Judge Lewis and assented to by Judge Garn, Senior Judge Jones found fault with the procedures for selecting and replacing court members.[1] In criticizing those procedures, Senior Judge Jones opined:

> By involving the Chief Trial Counsel in the "culling" process and the Trial Counsel in the replacement scheme, however, the authorities needlessly injected an appearance of evil into the procedure that should have been avoided. There is no place for the use of partisan government advocates in the sensitive area of selection of court members. The practice should be terminated forthwith.

*Id.* at 527–28.

In *United States v. Cherry, supra,* another case from Fort Lewis which was also

---

**1.** Those procedures were set forth in the opinion as follows:

> The Staff Judge Advocate requested nominees for court membership from the major subordinate commands. The commands were to use the criteria contained in Article 25(d)(2), Uniform Code of Military Justice, 10 U.S.C. 825(d)(2), in making their nominations. The Chief Trial Counsel and Chief, Criminal Law section in the Staff Judge Advocate's office then, using the Form 2s and 2–1s, "culled through" the list of nominees and made recommendation for certain members to be on certain panels (two general court-martial panels and three special court-martial panels). The Staff Judge Advocate submitted these recommended lists to the convening authority who, using the criteria of Article 25(d)(2), UCMJ, approved the lists as constituted. It is clear that he was aware that he could make any changes he deemed necessary.[1] When a member was excused by the convening authority, either permanently or for one or more cases only, it became the duty of the trial counsel to nominate a replacement. In this case the replacements were obtained from three sources: (1) from the membership of another panel previously selected, (2) from a nomination by the command of a member being excused, and (3) from the local organizational and staffing chart listing officers. The trial counsel used availability as his sole criterion in making recommendations but the convening authority again used the criteria of Article 25(d)(2), UCMJ, in making his personal selection. The convening authority also personally designated the panel to which this case was to be referred.
>
> [1] Although submission of only the precise number of names to be selected is not error, I believe it better practice to submit the entire list of nominees.

*United States v. Crumb,* 10 M.J. at 527 (Jones, S.J., concurring).

reversed for instructional error, the court of Military Appeals, citing with approval Senior Judge Jones' opinion in *Crumb*, observed:

[W]e have grave doubt whether the panel which tried appellant was properly constituted. Without ruling that it was reversible error at this time, we cast a jaundiced eye on the procedures purportedly used in the present case for selection of members to sit on the jury at this court-martial and for replacement of any court member who was excused.

*Id.* at 252–53 (citation omitted).

After arraignment, the trial defense counsel moved to dismiss the charges on the ground that the court-martial was improperly constituted. He asserted that, except for minor differences, Fort Lewis had continued to use the same procedures to select court members that had been condemned by *Crumb* and *Cherry.* In opposition, the Government maintained that the selection procedures had been changed to comply with those opinions.

Only two witnesses testified on the motion, the former Chief of Criminal Law and the Deputy Staff Judge Advocate, who noted that the court selection system had been in operation prior to their assignment to Fort Lewis. They described the selection procedures as follows: the Chief of Staff issued a letter, prepared by the Staff Judge Advocate, requesting nominees for court membership from major subordinate commands. Using the criteria contained in Article 25(d)(2), Uniform Code of Military Justice, 10 U.S.C. 825(d)(2), the commands sent lists of nominees to the Criminal Law Branch of the Office of the Staff Judge Advocate. There, the Chief of Criminal Law screened the nominees, aligned them into panels (two general court-martial panels of nine members each, two special court-martial panels of seven members each, and eight enlisted members to serve on request), and prepared draft recommendations that they be detailed to court-martial duty. He based his recommendations on the criteria of Article 25(d)(2) of the Code, jurisdictional considerations, balance between commanders and staff officers, minority representation and potential for juror disqualification. The Deputy Staff Judge Advocate and the Staff Judge Advocate reviewed his draft recommendations, made changes to them and submitted them to the convening authority for selection of the court members along with their personnel records. In addition, the names of the nominees who were not recommended and their personnel records were also submitted. The convening authority was advised to either write in the names of selected individuals or initial the names of the individuals recommended by the Staff Judge Advocate. It was made clear that he was not restricted to those individuals recommended by the Staff Judge Advocate and that his selections should be based on the criteria of Article 25(d)(2) of the Code. The convening authority ultimately selected the recommended individuals, and added names of colonels to be presidents of the general court-martial panels.

No evidence was presented concerning the procedures for selecting court members which had been in effect when the military judge was the staff judge advocate and which had engendered the critical opinions in *Crumb* and *Cherry.* However, the military judge *sua sponte* filled this evidentiary gap by stating:

MJ: I will state for the record, before you argue on the motion, that—this relates to the prior challenge of the military judge—that the system is quite different from the system as it was constructed when I was the Staff Judge Advocate here. First of all, there was no command letter that ever went out to the convening authorities signed by the Chief of Staff. Also, none of these automatic excusal provisions that are contained in Appellate Exhibit III were provided for in the old system, nor did we align jurisdiction—align the court members by jurisdictions, to my knowledge, to eliminate the possibility of a panel member having knowledge of the subject matter of a possible case. And nor were there any restrictions previously on reappointing court members who had previ-

ously sat, and quite often we found the convening authorities, back in those days, reappointing the same people to a court-martial panel. So, those are the main differences I notice in the system as it exists now and how it existed a couple of years ago. Proceed with argument, Captain Allsup.

The military judge then made special findings of fact, concluding that there were substantial differences between the court selection procedures in effect when the *Crumb* case was tried and those in issue at appellant's trial. As a result he concluded that the procedures used to select court members in the instant case were lawful and, accordingly, denied the defense motion.

## II

■ There is ample legal authority mandating disqualification of a military judge who is a witness for the prosecution. Article 26(d), Uniform Code of Military Justice, 10 U.S.C. 826(d), states, "No person is eligible to act as a military judge in a case if he is ... a witness for the prosecution ... in the same case." This is echoed by paragraph 62(f)(4), Manual for Courts-Martial, United States, 1969 (Revised edition), which includes the proscription as a ground for a challenge for cause against the military judge.

Furthermore, paragraph 63, Manual for Courts-Martial, United States, 1969 (Revised edition), provides:

If at any stage of the proceedings the military judge or any member of the court is called as a witness for the prosecution, he shall, before qualifying as a witness, be excused from further duty as military judge or member, respectively, in the case. Whether the military judge or a member called as a witness for the court is to be considered as a witness for the prosecution depends on the character of his testimony. In case of doubt he will be excused as military judge or mem-

ber, respectively. If a witness called by the defense testifies adversely to the defense, he does not thereby become a "witness for the prosecution."

For the purpose of this paragraph, a witness includes not only one who testified in court but anyone whose declaration is received as evidence for any purpose, including written declarations made by affidavit or otherwise. For example, a person who by his certificate has attested or otherwise authenticated an official record introduced in evidence by the prosecution, or who has authenticated any writing so introduced, is a witness for the prosecution even if he does not testify in person.

Finally, the Court of Military Appeals has held that even where a military judge does not testify, he becomes a witness for the prosecution and is thereby disqualified when he employs his own personal knowledge or specialized expertise in deciding the accused's guilt or innocence. *United States v. Conley*, 4 M.J. 327 (C.M.A.1978). *See also United States v. Head*, 2 M.J. 131 (C.M.A.1977). In *Conley*, a case involving the false signing of official documents, the Court held it was error for a military judge not to recuse himself where his specialized knowledge as a documents examiner and handwriting expert, in effect, made him a witness for the prosecution. While the Court reversed the case for judicial violation of codal and Manual provisions,[2] it also expressed its concern over the fact that constitutional rights were abridged:

Finally, we wish to add that the conduct of the military judge in considering his own specialized knowledge as a documents examiner in arriving at his findings raises serious constitutional questions. His persistence in refusing to recuse himself in this matter eviscerates the accused's traditional right to a public trial and flagrantly ignores his right to confront the witnesses against him. We believe that the initial arbiter of guilt or

---

**2.** Article 26(d), Uniform Code of Military Justice, and paragraph 62f(13), Manual for Courts-

Martial, United States, 1969 (Revised edition).

innocence in the military justice system, whether it be a military judge or a court constituted with members, must refrain from considering matters outside the regular course of trial unless they are within common knowledge or experience. Furthermore, we are disturbed by the apparent belief of the military judge that his expertise as a documents examiner can be accepted without the test for truth by cross examination prescribed for other handwriting experts and testimony in general.

*United States v. Conley*, 4 M.J. at 330 (footnotes omitted).

■ We hold that the military judge in this case violated the foregoing proscriptions by deciding the defense motion to dismiss on the basis of his own personal, specialized knowledge of the court selection procedures that were in effect at Fort Lewis at the time he was its staff judge advocate. We are cognizant that the military judge's deliction occurred in the course of deciding an interlocutory matter rather than guilt or innocence, and that he never testified in the formal sense but only made a statement for the record. Nevertheless, we believe the codal and Manual proscriptions apply and that he should have recused himself.

The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

Senior Judge MOUNTS and Judge YAWN concur.