UNITED STATES, Appellee,

v.

Second Lieutenant Rickie D. SMITH,
SSN 446–66–7310, United States
Army, Appellant.

CM 443298.

U.S. Army Court of Military Review.

13 July 1984.

Captain Michael D. Graham, JAGC, argued the cause for the appellant. With him on the brief were Colonel William G. Eckhardt, JAGC, Lieutenant Colonel William P. Heaston, JAGC, and Captain Harry L. Williams, Jr., JAGC.

Captain Patrick J. Cunningham, JAGC, argued the cause for the appellee. With him on the brief were Colonel James Kucera, JAGC, and Lieutenant Colonel Thomas M. Curtis, JAGC.[1]

Before MOUNTS, YAWN and WERNER, Appellate Military Judges.

OPINION OF THE COURT

MOUNTS, Senior Judge:

Contrary to his pleas, appellant was convicted by a general court-martial composed

---

1. The appellate oral arguments in this case by both counsel for the appellant and the Government reflect great legal acumen and were among the best arguments heard by this panel of the Court in recent years.

of members of conduct unbecoming an officer and a gentleman by committing an indecent assault upon a female officer, in violation of Article 133, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 933 (1982). The convening authority approved his sentence to a dismissal, confinement at hard labor for two years, and forfeiture of all pay and allowances, but suspended the execution of that portion adjudging confinement at hard labor in excess of three months until completion of appellate review.

Appellant has lodged a tripartite attack on the propriety of the convening authority's selection of certain female court members. He contends first that the court-martial lacked jurisdiction because the deliberate selection of female members on the basis of their sex does not comply with the statutory criteria of Article 25(d)(2), UCMJ, 10 U.S.C. § 825(d)(2). Article 25 provides, in part, that the convening authority shall detail persons to courts-martial who in his opinion "are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament." Second, that such selection amounts to gender-based discrimination in violation of the equal protection clause of the fourteenth amendment to the United States Constitution. Third, that the procedure employed to nominate an additional female court member was improper because it was unlawfully influenced by the prosecution. We do not find merit in any of these assignments of error.

## I

■■■ The convening authority in this case explained in a sworn statement that in addition to using the Article 25, UCMJ, criteria, he used the following factor in selecting court members:

I also look for some female representation on the panel. At no time have I had a concern for minority representation based upon race. In sex cases, however, I have a predilection toward insuring that females sit on the court.

Thereafter, he chose two female officers to serve as court members in appellant's court-martial.

The appellant asserts that this was improper under Article 25. He argues that the deliberate inclusion of qualified women members was designed to facilitate prosecution of the case. This argument is based on the assumption that it is more likely for a female court member to convict and enhance a sentence in a sex case with a female victim. We disagree. The appellant has submitted no evidence to support the validity of this assumption and if such an assumption is self-evident, the matter should have been explored by the trial defense counsel on *voir dire*. The record does not disclose any attempt by the trial defense counsel to show possible bias on the part of the female members. In fact, he exercised his one peremptory challenge against a male member of the court. In the absence of evidence to indicate that the convening authority deliberately included female court members in order to ease the Government's burden of proof or to enhance the sentence, we will not ascribe an evil motive to his action. While his reason for deliberately including women in sex cases is not clear, we hold that the use of sex as a factor in selecting court members is not incompatible with the criteria mentioned in Article 25, UCMJ. Sex can be properly construed as being related to the criterion "experience." The inclusion of females as court members in this case appears to have resulted in a fairer representation of the entire military community. The convening authority's deliberate inclusion of a female as a court-martial member in accordance with the criteria of Article 25, UCMJ, is not only proper but should be encouraged as an appropriate method of insuring appointment of court-martial panels representative of the entire military community. This will not only result in fairer, more accurate adjudications, but will also engender public respect for the military justice system.

## II

■■■ The appellant further contends that the convening authority's action con-

stituted a violation of the equal protection clause. In selecting court members, the convening authority did not use sex as the sole criterion to the exclusion of all others since many males were also selected as court members. The equal protection clause is violated if there is a systematic *exclusion* of a certain class of persons which operates to the detriment of the accused. *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690. Such an exclusion did not occur in this case.

### III

■ Appellant also alleges that the selection of one of the female court members was tainted because a prosecutor was instrumental in her nomination. We disagree.

The procedure for selecting court members was apparently as follows. After nominees were sent to the Criminal Law Division, Office of the Staff Judge Advocate, from subordinate special court-martial jurisdictions and the headquarters personnel sections, a master list containing the names of all the nominees was prepared and forwarded through the staff judge advocate to the convening authority. The convening authority selected and assigned members to one general court-martial panel and two bad-conduct discharge special court-martial panels. Replacements were obtained in similar fashion. The names of replacement nominees were taken from those remaining on the master list and from additions to that list and then forwarded to the convening authority for selection. This list of replacement nominees was prepared by a clerk in the Criminal Law Division who was subject to policy guidance from the Chief of Criminal Law and supervision of the noncommissioned officer-in-charge. The list contained a minimum of two nominees to replace each excused member. The problem in the appellant's case arose when the clerk, Specialist Five L, was permitted to exercise her own discretion in compiling the list of replacements. Specialist Five L erroneously believed she was required to obtain several female nominees. Although she could have obtained the names from the master list, Specialist Five L asked Captain C, a trial counsel in the Criminal Law Division, for some names. According to Captain C, who was not involved in the appellant's case and did not try cases involving personnel from appellant's unit:

> I gave Specialist L[ ... ] three names: Captain Joyce Utley, First Lieutenant Melanie Smith-Twomey, and Second Lieutenant Edith Meyers. All three of these women were military police and I referred to them as "hardcore." As a trial counsel, you want court members who are "hardcore." However, I thought that any of these women would be intelligent and fair members who could acquit the defendant if the evidence was not there ... [T]he three individuals I gave SP[5] L[ ... ] were intelligent and honest and would acquit the accused if the evidence was not there.

Of the names suggested by Captain C only First Lieutenant Smith's was placed on the list along with those of three other female officers: Captain Belz, First Lieutenant Lynch and First Lieutenant Mason. The convening authority selected First Lieutenant Smith to sit on appellant's court-martial. Neither the staff judge advocate nor the convening authority learned of Captain C's suggestion to Specialist Five L until after appellant's trial.

Appellant's allegation of impropriety is grounded on Senior Judge Jones' concurring opinion in *United States v. Crumb*, 10 M.J. 520 (A.C.M.R.1980), in which he observed that the culling and recommendation of court member nominees by "[t]he Chief Trial Counsel and Chief, Criminal Law section in the Staff Judge Advocate's office" and the nomination of replacement members by the trial counsel "needlessly injected an appearance of evil into the procedure that should ... [be] ... avoided." *Id.* at 527. The Court of Military Appeals cited with approval Senior Judge Jones' statements in *Crumb* in *United States v. Cherry*, 14 M.J. 251, 253 (C.M.A.1982). Additionally, the alleged impropriety was

exacerbated by the fact that Captain C recommended that "hardcore" military policewomen be nominated to replace excused court members.

Initially, we find that Captain C's use of the term "hardcore," although appearing to be sinister, apparently meant only that the recommended officers were dedicated and would perform their duty competently. In Captain C's opinion they were intelligent, honest and fair, and would acquit the accused if warranted by the evidence or lack of it. These qualities are not incompatible with the selection criteria of Article 25, UCMJ. While it would have been better practice for Captain C to have advised Specialist Five L to seek further guidance from her superiors, we find appellant suffered no harm. Nevertheless, we strongly suggest that staff judge advocates take appropriate measures to insure an impartial court member nomination process, in appearance as well as fact.[2]

Furthermore, we find the instant case to be distinguishable from *Crumb*.[3] In *Crumb* the list of nominees given to the convening authority contained precisely the number required for selection. In effect, the convening authority's discretion to choose court members was usurped. Here, the convening authority was given twenty-one nominees (including four females) and advised to select nine, and he selected only eight. Clearly, the convening authority exercised complete independence in selecting replacement members, a fact that dispells any possibility of prejudice.

The findings of guilty and the sentence are affirmed.

Judge YAWN and Judge WERNER concur.

---

2. Schwender, *One Potato, Two Potato...: A Method to Select Court Members*, The Army Lawyer, May 1984, at 12 (D.A. Pamphlet 27-50-137).

3. We note that Captain C was not the trial counsel who prosecuted the case, and his recommendation to SP5 L was without the knowledge or approval of the Chief of Criminal Law and was contrary to the established procedures for selecting replacements. Nevertheless, as a member of the Criminal Law Division and a prosecutor, Captain C should have known that any recommendation made by him regardless of whether the individual was "hardcore," would be looked upon with a "jaundiced eye." *United States v. Cherry, supra.*