310

UNITED STATES, Appellee,

v.

Howard Z. MURPHY, Aviation Administrationman Airman Apprentice U.S. Navy, Appellant.

No. 53,785.

NMCM 85–1856.

U.S. Court of Military Appeals.

Feb. 17, 1987.

For Appellant: *Lieutenant Commander James J. Quigley,* JAGC, USN (argued); *Lieutenant Commander Frederick N. Ottie,* JAGC, USN (on brief).

For Appellee: *Major F.F. Krider,* USMC (argued); Captain *Carl H. Horst,* JAGC, USN, and *Captain H.C. Lassiter,* USMCR (on brief); *Commander Michael P. Green,* JAGC, USN.

*Opinion of the Court*

SULLIVAN, Judge:

Appellant was tried by a special court-martial composed of a military judge alone on December 12, 1984. Contrary to his pleas, he was found guilty of unauthorized absence (three specifications) and wrongful use of marihuana, in violation of Articles 86 and 112a, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 912a, respectively. The military judge sentenced him to a bad-conduct discharge, confinement for 2 months, forfeiture of $150.00 pay per month for 2 months, and reduction to pay grade E–1. The convening authority approved these findings of guilty and the sentence; and the Court of Military Review affirmed these results.

We granted review on the following question of law:

WHETHER THE RESULTS OF URINALYSIS TESTS ALONE ARE SUFFICIENT UNDER THE CIRCUMSTANCES OF THIS CASE, AS A MATTER OF LAW, TO SUSTAIN A FINDING OF GUILTY TO WRONGFUL USE OF MARIHUANA.

We note that the Court of Military Review resolved this issue on the basis of *United States v. Strangstalien,* 7 M.J. 225 (C.M.A. 1979). That case held that a report of a

government laboratory chemical examiner was admissible to show that a substance allegedly possessed by an accused and produced at trial was marihuana. That case neither concerned the chemical analysis of urine nor addressed the problem of sufficiency of such evidence to show wrongful use. Accordingly, it is not dispositive of the granted issue. *See United States v. Harper*, 22 M. J. 157 (C.M.A. 1986).

The Government's evidence on the wrongful-use-of-marihuana offense was as follows: Prosecution exhibit 5 was a copy of a urinalysis consent form signed by appellant on October 17, 1984. Prosecution exhibit 9 was a partially filled urine specimen bottle linked to appellant. Prosecution exhibit 7 was a copy of a report on the above urine sample asserting that it tested positive for THC under three tests, i.e., RIA, GC, and GC/MASS SPEC. Prosecution exhibit 8 was a copy of the printouts for each of the tests performed on this sample. Additional testimony was adduced from various witnesses from the command concerning the command procedures for taking the specimen from appellant, mailing it to the laboratory, its return to command, and its presence in the courtroom. Appellant did not object to the admission of this evidence.

We further note that the Government offered no expert testimony concerning the meaning of these test results in terms of marihuana use. Mil. R. Evid. 702, Manual for Courts-Martial, United States, 1984. Also, there was no stipulation by the parties as to the import of these test results. R.C.M. 811(a), Manual, *supra*. Moreover, no judicial notice of any kind was taken by the military judge in accordance with Mil. R. Evid. 201 concerning these matters. Finally, defense counsel in his closing argument noted that there was no evidence of scientific acceptance of these tests or of the relevant scientific principles involved.

In *United States v. Conley*, 4 M.J. 327, 330 (C.M.A. 1978), this Court noted the numerous statutory and constitutional questions which arise when a military judge relies on "his own specialized knowl-

edge" in convicting an accused. *See Parker v. Gladden*, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966). The expertise of the judge in *Conley* was in handwriting analysis. Here, the area of concern is urinalysis. The Government asserts today that the scientific principles of urinalysis are within common knowledge or experience of members of the Naval Service, particularly, military judges. Accordingly, the Government urges that these principles could be considered by the judge in this case even if not evidenced in the record.

■ We are not persuaded that the scientific principles of urinalysis are matters of "common sense" or of "knowledge of human nature." *See* Discussion to R.C.M. 918(c); *see generally* 9 Wigmore, *Evidence* § 2570 (Chadbourn rev. 1981). Over 30 years ago, this Court said that "[t]he determination of the identity of narcotics certainly is not generally within the knowledge of men of common education and experience. Consequently, this question very properly is the subject of expert testimony." *United States v. Ford*, 4 U.S.C.M.A. 611, 613, 16 C.M.R. 185, 187 (1954). Neither Webster's Dictionary nor increased exposure of servicemembers to urinalysis, matters cited by the Government, dictate a contrary conclusion today. *See* P. Giannelli and E. Imwinkelreid, *Scientific Evidence* § 1–6(A) and Chapter 23 (1986). The best that can be said is that the common experience in the military is that the urinalysis program is designed to somehow chemically identify drug abusers within the ranks. Such general knowledge or common experience, however, does not provide a rational basis for drawing any inference from these test results concerning the specific drug offense charged in this case.

More particularly, the granted issue must be resolved against the Government for two reasons. First, there was no satisfactory basis in the record of trial for the judge to rationally conclude that THC had any relationship to the prohibited substance, marihuana. *Cf. United States v. Ford, supra* at 615, 16 C.M.R. at 189. Second, there was no basis in the record of

trial for the judge to rationally conclude that THC was not naturally produced by the accused's body or as a result of some other substance consumed by him. *Cf. id* at 616, 16 C.M.R. at 190. Accordingly, the record of trial does not support appellant's conviction for the wrongful use of marihuana. *United States v. Harper*, 22 M.J. at 161–62.

In *United States v. Harper, supra* at 161, this Court upheld a finding of drug use which was based on the scientific test results of a urinalysis plus the *in-*court expert testimony explaining the test results. In the instant case, we have a "pure paper" urinalysis case where the prosecution only enters documents evidencing a properly conducted urinalysis together with the scientific test results. There was no in-court expert testimony, and the defense did not stipulate to the meaning of the results of the urinalysis tests. Prosecution exhibit 8 is a copy of the printouts showing the scientific tests which purportedly identified appellant as a user of marihuana. This exhibit is twenty-two pages long. The ninth page of exhibit 8 is attached as an appendix to this opinion and exemplifies the complex scientific results submitted to the court-martial. Such evidence clearly needs in-court expert testimony to assist the trier of fact in interpreting it if it is to rationally prove that an accused used marihuana. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Likewise, the use of expert testimony will greatly assist an appellate court's review in this type of case.

In summary, where scientific evidence is relied upon to prove the use of marihuana, the Government may not presume that the judge or members are experts capable of interpreting such evidence. *See United States v. Conley*, 4 M.J. at 330. Expert testimony interpreting the tests or some other lawful substitute in the record is required to provide a rational basis upon which the factfinder may draw an inference that marihuana was used. *United States v. Ford, supra.* Even then, the factfinder is free to reject this evidence. *United States v. Wynn*, 11 U.S.C.M.A. 195, 29 C.M.R. 11 (1960).

The decision of the United States Navy-Marine Corps Court of Military Review as to the Additional Charge and its specification and the sentence is reversed; the findings of guilty thereon are set aside and the additional charge and its specification are dismissed. The decision as to the remaining charges and their specifications is affirmed. The record of trial is returned to the Judge Advocate General of the Navy for remand to that court for reassessment of the sentence based on the affirmed charges.

Chief Judge EVERETT and Judge COX concur.

APPENDIX

MAX PEAK HEIGHTS    787    528    297    215    145    80    9

DATA FROM SAMPLE # 999999 STORED IN SIM 1 DRIVE 3

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ION MASSES | 316 | 360 | 375 | 313 | 357 | 372 | 365 |
| DWELL TIMES (msec) | 25 | 25 | 25 | 25 | 25 | 25 | 25 |
| MAX PEAK HEIGHTS | 787 | 528 | 297 | 215 | 145 | 80 | 9 |

FILE SIM 1 TOTAL RUN TIME = 4.61
DATA IS NOT SMOOTHED

Plot from Ret Time 2.27 of SIM 01
to Ret Time 4.60
Data Acquired on 11/07/1984

| Plot Summary | | |
|---|---|---|
| Trace | Ion Mass | Full Scale |
| 1 | 316.0 amu | 787 |
| 2 | 360.0 amu | 528 |
| 3 | 375.0 amu | 298 |
| 4 | 313.0 amu | 215 |
| 5 | 357.0 amu | 145 |
| 6 | 372.0 amu | 80 |
| 7 | 365.0 amu | 10 |

Traces:

STOPPED AT RETENTION TIME 4.59

*** INTEGRATION REPORT ***
Channel # 1
Sample ID: 999999
Ion Mass 316.0 amu

Run Type: SIM                                   Date Acquired: 11/07/1984
Data Disc: SIM01

| Ret Time | File ID | Scan Numbers | | Area Counts | | | Flags | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Start | Stop | Raw ● | Horiz | Tangt | A | B | C | D |
| 4.11 | 1 | 142 | 162 | 3843 | 3709 | 3709 | | | | |