OPINION OF THE COURT
VARO, Judge:
Contrary to his pleas, the appellant was convicted by a military judge sitting as a general court-martial of distribution of cocaine, use of cocaine, making false statements, and receipt of stolen property in violation of Articles 112a and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 912a and 934 (1982 & Supp. I 1983) [hereinafter UCMJ]. His approved sentence provides for a dishonorable discharge, confinement for seven years, total forfeitures and reduction to Private El.
The appellant now assigns five errors, to wit: that (1) he was subjected to unlawful pretrial punishment in violation of Article 13, UCMJ, 10 U.S.C. § 813; (2) he was denied effective assistance of counsel because his trial defense counsel failed to raise or recognize the relevance of his unlawful pretrial punishment; (3) the evidence is insufficient to support his convictions for distributing and using cocaine on 5 July 1988; (4) the evidence is insufficient to support his conviction for distribution of cocaine on 4 July 1988; and (5) the evidence is insufficient to support his conviction for receipt of stolen property.
The appellant asserts that he was subjected to various forms of unlawful pretrial punishment in violation of Article 13, UCMJ, and seeks appropriate relief citing United States v. Cruz, 25 M.J. 326 (C.M.A.1987) (sentence relief may be appropriate where unlawful pretrial punishment has occurred). In response to this assertion, the government argues that because all alleged pretrial punishment occurred before charges were preferred against the appellant, any untoward actions taken against him could not constitute pretrial punishment for the offenses in this case. Further, the government argues that the alleged actions against the appellant were very mild in comparison to those in Cruz, and therefore, this court should not consider them to be violative of Article 13, UCMJ. We disagree with both government arguments.
The government’s argument regarding the time of preferral of charges is based on the language of Article 13, UCMJ, which states in part that it applies to persons “being held for trial’’ (emphasis added). We find the government’s reading to be too restrictive because the nature of treatment of the soldier, not the date of the formal preferral of charges must be the *982 standard upon which to determine whether unlawful pretrial punishment has occurred. For the purpose of comparison, some of the violations in Cruz occurred prior to preferral. With regard to the government’s second position, although the Court of Military-Appeals expounded on pretrial punishment in some detail in Cruz, we do not believe that that opinion sets a minimum threshold on the definition of such punishment. Rather, we perceive it as a comparative benchmark for use in determining appropriate remedies when unlawful pretrial punishment has occurred.
In the case at bar, Government Appellate Exhibit 2 includes a 4 March 1989 memorandum prepared by the Commander, 1st Brigade, 101st Airborne Division (Air Assault), Fort Campbell, Kentucky, which states that the appellant’s company commander “exercised poor judgment in allowing and even encouraging a command climate within Company C that promoted subordinate leaders and junior enlisted soldiers to take corrective and even punitive action, outside the military justice system against fellow soldiers suspected of criminal activity.” This memorandum was prepared as part of the command investigation into the allegations of unlawful pretrial punishment raised by the appellant after his trial. We conclude that some form of unlawful pretrial punishment occurred and perceive no need for a DuBay[1] hearing to gather further information. We consider the assignment of error meritorious and one which warrants consideration by the sentencing authority in determining an appropriate sentence in this case. Matters regarding the nature of unlawful pretrial punishment may be fully addressed, if desired, by appellant at his sentence rehearing ordered, infra.
As noted above, the command investigation into the issue of unlawful pretrial punishment occurred after the appellant’s trial. Our review of the record of trial to include the statements by the appellant and his counsel, lead us to conclude that there was insufficient credible material presented to the trial defense counsel prior to trial which warranted his raising the issue. Therefore, we find the appellant’s assertion of inadequate representation by counsel to be without merit.
The appellant next asserts that his convictions for use and distribution of cocaine on 5 July 1988, were unsupported by the evidence because the government never established either by credible testimony or scientifically that the substance involved was cocaine. The key government witness regarding this specification was Mr. Smith, who is a former soldier and an acquaintance of the appellant’s. Smith testified that he and his roommate (McClesky) went to the appellant’s room on 5 July 1988. While there, he saw the appellant take some white powder and place it in a cigarette. The appellant then shared the cigarette with Smith and McClesky. Smith testified further that the appellant never told him the substance was cocaine and that he (Smith) had never used cocaine or any drugs before the incident on 5 July 1988. Finally, Smith testified that he believed that what he smoked had been cocaine solely because a urine sample he gave on 7 July 1988 tested positive for a cocaine metabolite.
The government then called Mr. D, the chief of the Fort Campbell Identification and Training Branch, Drug Control Division. Following Mr. D’s statement that Smith’s sample had tested positive, the government moved to admit the Fort Campbell Form 968 (list of persons tested) and the front and back of the chain of custody form from the Drug Testing Laboratory, Fort Meade, Maryland (DA Form 5180-R) as Prosecution Exhibits 23, 24, and 25, respectively. The trial defense counsel objected to these forms because of a lack of expert testimony to interpret and explain laboratory procedures and the basis for the positive notation on the chain of custody document. This objection was overruled by the military judge stating, “A notation positive for cocaine doesn’t require an interpretation at this stage.” No other evidence was presented regarding the col *983 lection, testing procedures or results of Smith’s 7 July 1988 sample.
Following the defense case, the government called McClesky (Smith’s roommate) to testify in rebuttal. The nature of the rebuttal went solely to matters presented by the defense with regard to the appellant’s whereabouts during the fourth of July weekend. While McClesky did make mention of the incident in the appellant’s room with Smith, the military judge sustained a defense objection to that portion of the line of questioning by the government as being outside the scope of proper rebuttal. Based on this ruling, we will not consider McClesky’s testimony on the charges of use and distribution of cocaine on 5 July 1988.
For some unknown reason, the appellant was not tested with the rest of his unit on 7 July 1988. Therefore, his conviction for use on 5 July 1988, was based on Smith’s testimony combined with the positive test result on Smith’s urine sample.
The appellant now asserts that the Smith’s testimony reveals that he had no prior knowledge of cocaine whatsoever and therefore, the sole basis for the appellant’s conviction for both distribution and use actually was the chain of custody document which was admitted over defense objection. It has now been well established that the scientific principles of urinalysis are not matters of common sense or of knowledge of human nature so that the mere results of urinalysis, standing alone, are sufficient without the supporting testimony of an expert to support the findings. United States v. Murphy, 23 M.J. 310, 311 (C.M.A.1987). In Murphy, the Court of Military Appeals reversed a conviction for use of marijuana when based solely upon a urinalysis test which recorded a positive finding for THC and which was offered without accompanying expert testimony.
In the case at bar, no scientific evidence or testimony was presented. The government never established whether the a cocaine metabolite could or would be found two days after ingestion. Further, there was no testimony or evidence which established the method of testing or the degree of reliability of that method, nor evidence that natural body functions could not have produced the result in Smith’s test. We might take a different view of this issue had Smith testified that he had personal knowledge of the nature of cocaine. However, from his own testimony, it is apparent that Smith was never told he was receiving cocaine and that his testimony that he used cocaine is based solely on the test result he received. Thus, when the military judge accepted Prosecution Exhibits 24 and 25 without supporting expert testimony, he apparently relied upon his own “specialized knowledge” to convict the appellant. Murphy, 23 M.J. at 311 citing United States v. Conley, 4 M.J. 327, 330 (C.M.A.1978). Such a practice is in direct contradiction with the principles set forth in Murphy. Therefore, we agree with the appellant’s assertion that there is insufficient evidence in the record to convict him of Specifications 1 and 2 of Charge I.
The appellant further asserts that the evidence is insufficient to prove beyond a reasonable doubt that he is guilty of Specification 6 of Charge IV. The appellant was charged with receiving stolen property in the form of a car stereo belonging to Specialist (SPC) T. There is no dispute that SPC T’s stereo was stolen nor that the appellant pawned a car stereo of the same make and model. In proving its case, the government relied on the testimony of SPC T, the owner of the stereo. SPC T stated that he recognized the stereo because it had two factory spot-welds on the side just like his, that the wires in the back were tied together with yellow string which came with the unit, and that there was a light scratch on the side where he had marked it when making an identification plate for the stereo. With regard to the last element of identification, SPC T elaborated that he made this mark by feeling along the side of the stereo after it had been installed in his car.
In his testimony, SPC T revealed that there was no manufacturer’s identification number imprinted on the stereo. In order to safeguard the unit, he obtained a metal plate that displayed his name and the iden *984 tification number. He had then affixed this plate to the stereo on 25 July 1988, using “liquid solder.” SPC T stated that he had used liquid solder before and it was made for metal to metal bonding and became very strong after it sets in about forty-eight hours. SPC T further stated that from his personal experience, once the liquid solder sets up, removal would require a hammer, chisel or sander. The stereo was reported stolen on 29 July 1988 after SPC T returned from the field. The last time he saw it in his car was on the evening of 27 July 1988.
Our review of the photographs of the car stereo coupled with SPC T’s testimony reveal absolutely no indication of a plate being placed on the stereo admitted as evidence. There are no abnormal markings or scratches on the side where the plate would have had to have been scraped off. In fact, that portion of the car stereo is described and appears in the photographs to be smooth and unblemished. Based on the specificity of the charge and the description provided by the victim, we hold that the government did not prove beyond a reasonable doubt that the car stereo in question was in fact the property stolen from SPC T thus failing to prove essential elements of the offense. Manual for Courts-Martial, United States, 1984, paragraph 106b.
We have considered all other matters raised by the appellant and find them to be without merit.
The findings of guilty of Specifications 1 and 2 of Charge I are set aside. Specifications 1 and 2 of Charge I are dismissed.
The findings of guilty of Specification 6 of Charge IV are set aside. Specification 6 of Charge IV is dismissed.
The remaining findings of guilty, to wit: as to Specifications 3 and 4 of Charge I, and Specifications 1 and 3 of Charge IV are affirmed.
The sentence is set aside. A rehearing on the sentence will be ordered by the same or a different convening authority. The convening authority shall include in his Action his consideration of this court’s determination that the appellant was subjected to unlawful pretrial punishment as well as the sentence reassessment, if any, taken based on this determination.
Senior Judge FOREMAN and Judge SMITH concur.

. United States v. DuBay, 37 C.M.R. 411 (C.M.A.1967).