UNITED STATES, Appellee,

v.

Private E2 Kerry A. COLEMAN, 382–72–2265, United States Army, Appellant.

ACMR 8902817.

U.S. Army Court of Military Review.

15 Nov. 1990.

Reconsideration Denied 9 Jan. 1991.

For appellant: Captain Andrew G. Oosterbaan, JAGC (argued), Captain Jeffrey J. Fleming, JAGC (on brief), Captain W. Renn Gade, JAGC, Captain Holly K. Desmarais, JAGC.

For appellee: Major Martin D. Carpenter, JAGC (argued), Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Mark E. Frye, JAGC (on brief).

Before KUCERA, WERNER, and GRAY, Appellate Military Judges.

## OPINION OF THE COURT

GRAY, Judge:

A military judge sitting as a general court-martial convicted the accused, contrary to his pleas, of forgery, wrongful use of marijuana, making a false official statement, and wearing unauthorized military insignia in violation of Articles 132, 112a, 107, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 932, 912a, 907, and 934 (1982 and Supp. V 1987). The approved sentence provides for a bad-conduct discharge, confinement for three years and six months, forfeiture of all pay and allowances, and reduction to Private E1.

The appellant contends that the military judge erred by admitting the laboratory results over defense objection. He also asserts that the military judge erred by taking judicial notice of facts interpreting the urinalysis results. Finally, appellant contends that the evidence is insufficient to prove his guilt of marijuana use.

We hold as follows: First, that the military judge did not err in admitting Prosecution Exhibit 14 since the trial defense counsel waived the error by failing to specifically object. Second, the military judge erred by taking judicial notice of facts interpreting the urinalysis results. Third, the admissible evidence is not sufficient to prove the appellant's guilt of use of marijuana beyond a reasonable doubt.

## I. Facts

On 3 March 1989, appellant was ordered by his company commander to submit to a urinalysis. The appellant's urine sample was sent to a government drug testing laboratory at Brooks Air Force Base, Texas, which reported that the specimen tested positive for the presence of marijuana metabolites. At trial, the Government introduced Prosecution Exhibit 14, the test results, to prove appellant's use of marijuana. Trial counsel also requested that the judge take judicial notice of certain facts which were set forth in Appellate Exhibit III purporting to explain the significance of the test results.

Prosecution Exhibit 14 consists of the following documents:

a. A cover letter containing a summary of the laboratory testing of appellant's urine, and also containing an attesting certificate.

b. A Dep't of Air Force Form 1890, Urinalysis Custody and Report Record (Apr.1986), stating that appellant's urine specimen was tested and determined to be "THC POS."

c. One Air Force Service Command Form 3616, Laboratory Radioimmunoassay Chain of Custody (Oct. 86).

d. Twelve pages of charts, graphs, and data reflecting the tests performed on appellant's urine and the test results.

e. Air Force Service Command Form 3617, Laboratory Confirmation Chain of Custody (Oct. 86).

f. A four-page affidavit describing the testing procedures and capabilities of the Air Force Drug Testing Laboratory, Brooks Air Force Base, Texas.

Appellate Exhibit III states the following:

a. The drug marijuana is derived from the marijuana plant. When marijuana is inhaled or ingested, the body, through the process of metabolism, converts marijuana into several dozen metabolites (break-down products) which it then excretes in urine. The predominant marijuana metabolite found in urine is 11–nor–Delta–9–tetrahydrocannabinol–9–carboxylic acid. Marijuana metabolites are not found in human urine unless marijuana has been ingested.

b. 11–nor–Delta–9–tetrahydrocannabinol–9–carboxylic acid can be conclusively identified through a properly conducted radioimmunoassay [sic] (RIA) screening test followed by a gas chromatography/mass spectrometry (GC/MS) confirmatory test of a urine sample.

c. All military drug testing laboratories operate under a set of regulations that require urine samples to contain sufficient quantities of marijuana metabolites to exceed set screening levels. These levels virtually eliminate the possibility that the presence of marijuana metabolites in the urine results from the passive inhalation of marijuana smoke.

Appellant's counsel objected to the admission of Prosecution Exhibit 14 on "foundational grounds" but failed to otherwise specify the basis of his objection. He also objected to the military judge taking judicial notice of Appellate Exhibit III on the grounds that the matters set forth therein were not the kinds of facts that could be judicially noted pursuant to Manual for Courts–Martial, United States, 1984, Military Rule of Evidence 201(b) [hereinafter Mil.R.Evid.].

## II. Admissibility

■ The defense counsel failed to object with specificity to the admissibility of Prosecution Exhibit 14; therefore, the issue is waived. Military Rule of Evidence 103(a)(1) states, in part, that an objection at trial must state the specific ground upon which the objection is based.

Upon the Government's motion to admit Prosecution Exhibit 14, the following collo-

quy occurred between defense counsel and the trial judge:

DC: Well, Your Honor, the only objection we would have to this packet, we've not had any testimony that would tell us what all these different charts and numbers and these—

MJ: Well, let's leave this one for a second. How about 12 and 13?

DC: No objections to those, Your Honor.

MJ: Okay, Prosecution Exhibit 12 and 13 for identification are received into evidence as Prosecution Exhibit 12 and 13.

TC: Your Honor, in response to the defense's objection to the absence of an explanation, the government would refer you to the summarization of the voluminous document, litigation packet. The first page of Prosecution Exhibit 14 has a summary of the findings of all the charts and grafts [sic] in the litigation packet and that that [sic] document is admissible under the Military Rule of Evidence 1006, as a summary of voluminous lab report, and that, we believe, is more than adequate to explain the contents of the laboratory report.

MJ: Defense?

DC: Well, Your Honor, our position would be the packet contains a great deal of information, a lot of it of a scientific nature. If the—

MJ: Now are we talking admissibility or are we talking weight and credit?

DC: Well, Your Honor, we—I guess on one aspect we're talking admissibility as to portions of it. Looking at foundation requirements, we don't have any individual here that took part in the testing of—that put together all these charts that could say this is true and accurate. The other thing is, looking at the weight involved, there's a lot of things in here that they refer to dealing with numbers and graphs and charts, and it's as if the government's trying to put a little icing on the cake there.

MJ: That's what I said. Are we talking admissibility or are we talking weight and credit?

DC: Our position would be a little of both, Your Honor.

MJ: Well, let's take it one at a time. What's your objection as to the admissibility?

DC: On foundational requirements, Your Honor.

Defense counsel's objection was not specific enough. *United States v. DiCupe*, 21 M.J. 440 (C.M.A.1986), *cert. denied*, 479 U.S. 826, 107 S.Ct. 101, 93 L.Ed.2d 52 (1986). Furthermore, we can not discern from the dialogue between counsel and the military judge the basis for the objection. The defense counsel has a duty to identify the evidence objected to, and the grounds upon which the objection is based. *United States v. McLemore*, 10 M.J. 238 (C.M.A. 1981).

### III. Judicial Notice

We hold that the military judge erred by taking judicial notice of Appellate Exhibit III as some of the information contained therein is not judicially noticeable under Military Rule of Evidence 201. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known universally, locally, or in the area pertinent to the event or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Military Rule of Evidence 201(b).

In *United States v. Murphy*, 23 M.J. 310, 311 (C.M.A.1987), the Court of Military Appeals considered the question whether a report of a urinalysis test result, admitted without defense objection and establishing that the accused had used marijuana, was legally sufficient to sustain his guilt. In determining that it was not, the Court held:

[w]e are not persuaded that the scientific principles of urinalysis are matters of 'common sense' or of 'knowledge of human nature.' Over 30 years ago, this Court said that '[t]he determination of the identity of narcotics certainly is not generally within the knowledge of men of common education and experience. Consequently, this question very properly is the subject of expert testimony.' Neither Webster's Dictionary. nor increased exposure of servicemembers to urinalysis matters cited by the Govern-

ment, dictate a contrary conclusion to-day. The best that can be said is that the urinalysis program is designed to somehow chemically identify drug abusers within the ranks. Such general knowledge or common experience, however, does not provide a rational basis for drawing any inference from these test results concerning the specific drug offense charged in this case.

*Id.* at 311 (citations omitted).

The Court further stated:

Where scientific evidence is relied upon to prove the use of marihuana, the Government may not presume that the judge or members are experts capable of interpreting such evidence. Expert testimony interpreting the test or some other lawful substitute in the record is required to provide a rational basis upon which the factfinder may draw an inference that marihuana was used. Even then the factfinder is free to reject this evidence.

*Id.* at 312 (citations omitted).

The Court in *Murphy* intimated that, in lieu of expert testimony, the prosecution might be able to successfully prove its case through stipulations by the parties or judicial notice. However, the Court cautioned that the taking of judicial notice by a military judge involves reliance on the judge's "own specialized knowledge" and presents "numerous statutory and constitutional questions." For example, the judge may become a *de facto* expert witness for the prosecution who would be disqualified from sitting as a factfinder. *See United States v. Conley,* 4 M.J. 327, 330 (C.M.A.1978); *United States v. Davis,* 30 M.J. 980 (A.C. M.R.1990); *United States v. Jamison,* 18 M.J. 540 (A.C.M.R.1984).

The facts judicially noticed in Appellate Exhibit III purport to establish: (1) the body metabolizes ingested marijuana to form metabolites which it excretes in urine; (2) the principal metabolite is 11–nor–Delta–9–tetrahydrocannabinol–9–carboxylic acid; (3) this metabolite can be conclusively identified through examination of a urine sample by a radioimmunoassay (RIA) screening test followed by a gas chroma-tography/mass spectrometry (GC/MS) confirmatory test; and (4) before concluding there was marijuana use, all military drug testing facilities are required by regulation to find a sufficiently high level of metabolites in urine samples to eliminate the possibility of passive inhalation of marijuana.

■ Notwithstanding the breadth of the language in *Murphy,* military judges may, in an appropriate case, take judicial notice of facts pertaining to urinalysis testing if those facts are generally known or capable of accurate and ready determination from unquestionably accurate sources. It is not necessary to "reinvent the wheel" to establish universally accepted scientific principles and testing procedures each time a urinalysis test result is proffered. However, the facts judicially noticed in the case at hand do not qualify under Military Rule of Evidence 201. The Government failed to demonstrate that those facts were generally known or universally accepted as accurate. Moreover, we are not satisfied that because military regulations require drug testing facilities to adhere to certain standards to guard against unreliable test results, it eliminates the possibility of errors in conducting the tests. *See United States v. Van Horn,* 26 M.J. 434, 438 (C.M.A.1988) (Everett, Chief Judge, concurring). Accordingly, the taking of judicial notice in this case was an abuse of discretion.

## IV. Sufficiency of the Evidence

■ We find the admissible evidence is insufficient to prove appellant guilty of use of marijuana beyond a reasonable doubt. First, urinalysis results without some form of expert testimony or some other lawful substitute will not sustain a conviction for use of drugs. *United States v. Murphy,* 23 M.J. at 312. Second, Prosecution Exhibit 14 standing alone is not sufficient to prove appellant's guilt.

The findings of guilty of Charge III and its Specification are set aside and Charge III and its Specification are dismissed. The remaining findings of guilty are affirmed. Pursuant to *United States v. Sales,* 22 M.J. 305 (C.M.A.1986), we have reassessed the sentence on the basis of the error noted

and the entire record, and affirm only so much of the sentence as provides for a bad-conduct discharge, confinement for two years, forfeiture of all pay and allowances, and reduction to Private E1.

Judge WERNER concurs.

KUCERA,* Senior Judge concurring in result with comment.

In my view, the legal principles of *United States v. Strangstalien,* 7 M.J. 225 (C.M.A.1979) are applicable. In that case, the Court of Military Appeals determined that a report by a government laboratory chemical examiner was admissible to show that a substance possessed by an accused was marijuana ought to be dispositive of issues concerning admissibility of urinalysis laboratory reports. Once admitted, at the choosing of the parties, or by a request of the fact finder, the meaning, creditability, accuracy and weight of such admitted urinalysis reports could be litigated just like any other evidence—scientific or otherwise. However, under the holding of *United States v. Murphy,* 23 M.J. 310 (C.M.A. 1987), I must concur in the result of the principal opinion that the evidence is insufficient to prove the appellant guilty of marijuana use.

---

* Judge James Kucera took final action on this case prior to his retirement.