**UNITED STATES, Appellee,**

v.

**Sergeant First Class Donald L. HARPER, 424–68–1440, United States Army, Appellant.**

**ACMR 8903809.**

U.S. Army Court of Military Review.

22 Feb. 1991.

For Appellant: Major Michael J. Kelleher, JAGC, Captain Jeffrey J. Fleming, JAGC, Captain Holly K. Desmarais, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Martin D. Carpenter, JAGC, Major Maria C. Fernandez, JAGC, Captain Timothy W. Lucas, JAGC (on brief).

Before NAUGHTON, GRAVELLE and JOHNSTON, Appellate Military Judges.

## OPINION OF THE COURT

JOHNSTON, Judge:

The appellant, a sergeant first class with approximately eighteen years of service, was tried by a military judge sitting as a special court-martial. Contrary to his plea, he was convicted of a single specification of wrongful use of marijuana in violation of Article 112a, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 912a (Supp. V 1987). The convening authority approved the adjudged sentence of a bad-conduct discharge and reduction to Private E1.

The appellant contends, *inter alia,* that the military judge erred by taking judicial notice of the meaning of urinalysis test data. We agree.

At trial, the prosecution presented testimonial evidence concerning urine specimen collection, packaging, and submission to a laboratory. The test results, chain of custody forms, twenty pages of laboratory analysis data, and a five page affidavit describing the tests and quality control measures employed, were all admitted as Prosecution Exhibit 3 (hereinafter P.E. 3). No expert testimony or stipulation was presented concerning the meaning of the test data or the results. There was no evidence of the scientific acceptance of the tests or of the relevant scientific principles involved. The military judge, over defense objection, took judicial notice of the following matters crucial to the prosecution's case:

■ [T]hat when marijuana is inhaled or ingested, the body, through the process of metabolism, converts marijuana into several dozen metabolites which it then excretes in urine.

■ The predominant marijuana metabolite found in urine is 11–nor–Delta–9–tetrahydrocannabinol 9–carboxylic acid.

■ Such metabolites have only been detected in human urine after marijuana has been ingested.

■ 11–nor–Delta–9–tetrahydrocannabionl [sic] 9–carboxylic acid can be identified through a properly conducted radioimmunassay screening test followed by a gas chromatography/mass spectrometry

confirmatory test of a urine sample, and that

■ [A]ll military drug testing laboratories operate under a set of regulations that require urine samples to contain sufficient quantities of marijuana metabolites to exceed set screening levels.

## I

This case and several other similar cases currently before this court from the same installation[1] demonstrate the government's attempt to respond to *United States v. Murphy*, 23 M.J. 310 (C.M.A.1987). In *Murphy*, the Court held:

> [W]here scientific evidence is relied upon to prove the use of marihuana, the Government may not presume that the judge or members are experts capable of interpreting such evidence. Expert testimony interpreting the tests *or some other lawful substitute* in the record is required to provide a rational basis upon which the factfinder may draw an inference that marihuana was used.

*Id.* at 312 (citation omitted) (emphasis added). The trial counsel in this case apparently sought to use judicial notice as "some other lawful substitute."

■ Manual for Courts–Martial, United States, 1984, Mil.R.Evid. 201 governs judicial notice of adjudicative facts, *i.e.*, those facts of a case usually resolved by the factfinder. Judicial notice of facts serves as a substitute for testimonial, documentary, or real evidence and relieves a proponent from formally proving certain facts that reasonable persons would not dispute. S. Saltzburg, L. Schinasi, and D. Schlueter, *Military Rules of Evidence Manual* 66 (2nd ed. 1986). A fact that may be judicially noticed is one that is not subject to reasonable dispute in that it is either (1) generally known universally, locally, or in the area pertinent to the event, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot

reasonably be questioned. Mil.R.Evid. 201(b).

■ Mil.R.Evid. 201(d) specifies that "[t]he military judge shall take judicial notice if requested by a party and *supplied with the necessary information.*" (Emphasis added). In the case at bar, the record contains nothing reflecting "general knowledge" or "accurate and ready determination" of the tests conducted at the laboratory or of the relevant scientific principles involved. The prosecution failed to supply the military judge with the "necessary information" required by Mil.R.Evid. 201(d). Instead the military judge merely stated, "Well, it seems to me, after glancing at Rule 201, Military Rules of Evidence, this seems to be the exact type of matter that's capable of being taken judicial notice of.... I will take judicial notice of ... [Items 1–5] pursuant to the government's request for judicial notice, Appellate Exhibit III...."

■ While the scientific principles and laboratory techniques involved in urinalysis testing may be "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," there is no appellate exhibit or admissible evidence in the record which would supply a basis for the military judge's conclusion. When the prosecution attempts to use judicial notice as a lawful substitute for expert testimony in interpreting urinalysis test results, treatises, articles from scientific journals, and similar "sources whose accuracy cannot be questioned," should be included in the record of trial as appellate exhibits.

■ Even if the scientific principles and laboratory techniques involved here are noticed judicially, the application of those principles and techniques to a particular urine sample is not a fact that can be judicially noticed. While a properly conducted laboratory test may show the presence of metabolites of prohibited substances, it would be improper for a military

---

1. In Hunter & Davidson, *Urinalysis Cases and Judicial Notice*, The Army Lawyer, July 1990, at 34, Fort Hood trial counsel describe a method of using judicial notice in proving a wrongful use urinalysis case. The article discusses the issues involved and provides suggestions on trial tactics.

judge to judicially notice that a particular sample was analyzed properly. That is a question of fact that must be proven by the government.

 The fifth item that was judicially noticed causes us additional concern. A military judge may properly take judicial notice of regulations that require military drug laboratories to verify that screening levels have been exceeded. The wording of the fifth item, however, suggests that the laboratories *in fact* operate as required. We are not satisfied that merely because military regulations require drug testing facilities to adhere to certain standards, that errors will not occur. Accordingly, the taking of judicial notice of the fifth item was an abuse of discretion. *See United States v. Coleman*, 32 M.J. 508 (A.C.M. R.1990).

## II

In this case, the government attempted to show that the urinalysis testing had been conducted properly by presenting P.E. 3 (including six attachments) as a business record. Even though a portion of P.E. 3 explained that the appellant's sample had been contaminated, the government attempted to rely upon a presumption of regularity in testing samples when they offered the laboratory report as a business record.

 It is well settled in military law that a laboratory analysis conducted in the regular course of business by a qualified chemist of a private or governmental agency is admissible as a business record. Mil. R.Evid. 803(6); *United States v. Holman*, 23 M.J. 565, 567 (A.C.M.R.1986). In this case, however, a portion of P.E. 3 was not a proper part of a business record. The business of the forensic laboratory is to account for the submitted substances, analyze them, and report on the results of those tests. The affidavit, which purportedly describes the test procedures utilized and quality control measures employed, does not relate directly to the tests conducted on the appellant's urine. Instead it was offered by the government in an attempt to bolster the reliability of the laboratory tests conducted.

In effect, the government has attempted to introduce expert testimony by way of affidavit to establish a scientific basis for several of the Items 1–5 for which judicial notice was also sought—all under the guise of a business record. While we recognize that the regulations controlling the laboratory and documented internal operating procedures may be proper subjects for judicial notice, the affidavit in this case does not become a "business record" within the meaning of Mil.R.Evid. 803(6), merely because it may be required by regulation. If that proposition were true, the government could ease its burden of proof in contested cases merely by using a regulation to permit expert witnesses to attach affidavits to proper business records. We hold that the military judge erred in admitting the affidavit portion, Attachment 6, of P.E. 3 as a business record.

 The admissibility of a laboratory report as a business record does not bar an accused from attacking the accuracy of the report by calling the laboratory technician to test his expertise and the regularity of the procedures employed. *Holman*, 23 M.J. at 567. The accused can assert his right to cross-examine by calling the declarant as a witness and examining him as if under cross-examination. *United States v. Miller*, 49 C.M.R. 380 (C.M.A.1974). The failure to call the witness does not waive these issues, however, when the purported business record contains information that was improperly admitted into evidence.

## III

 The military judge erred to the substantial prejudice of the appellant by improperly admitting portions of a laboratory report as a business record and by taking judicial notice of facts that were in dispute. The remaining admissible evidence in this case, *e.g.*, witness testimony, P.E. 3 (less the affidavit), is insufficient to prove the appellant's guilt beyond a reasonable doubt. Urinalysis results without expert testimony interpreting the tests or "some other lawful substitute" in the

record will not sustain a conviction for wrongful use. *United States v. Murphy,* 23 M.J. 310 (C.M.A.1987).

The findings of guilty and the sentence are set aside. The charges are dismissed.

Senior Judge NAUGHTON and Judge GRAVELLE concur.