**UNITED STATES, Appellee,**

v.

**Private E2 Christopher P. HOWARD, 040–76–4940, United States Army, Appellant.**

**ACMR 9001499.**

U.S. Army Court of Military Review.

15 July 1991.

For Appellant: Captain Alan M. Boyd, JAGC, Captain Robin N. Swope, JAGC, Captain Michael W. Meier, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Timothy W. Lucas, JAGC, Captain Randy V. Cargill, JAGC (on brief).

Before FOREMAN, HAESSIG and HAGAN, Appellate Military Judges.

## OPINION OF THE COURT

FOREMAN, Senior Judge:

A military judge sitting as a special court-martial convicted the appellant, in accordance with his pleas, of wrongful use of marijuana, wrongful possession of marijuana, and wrongful possession of lysergic acid diethylamide (LSD), in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (1982 & Supp. V 1987). The approved sentence provides for a bad-conduct discharge, confinement for three months, forfeiture of $482.00 pay per month for three months, and reduction to Private E1.

The appellant contends that the military judge improperly considered matters that had not been introduced in evidence to arrive at the adjudged sentence. The appellant and Specialist (SPC) B purchased some leaf marijuana in Amsterdam on 3 March 1990 and smoked a portion of it. On the evening of 3 March 1990, the appellant and Specialist B purchased six units of LSD and split them equally. The appellant and SPC B returned to their barracks in Aschaffenburg, Germany, on the afternoon of 4 March 1990. Late that evening or early the following morning, the appellant's company commander authorized a search of the appellant's room, based on the sworn statement of SPC B, who had been apprehended while transferring LSD to a confidential informant. Agents of the US Army Criminal Investigation Command (CID) seized a pipe containing marijuana residue, a book entitled "Mellow Pages, A Smoker's Guide to Amsterdam," three units of LSD, and a small quantity of leaf marijuana from the appellant's wall locker.

During the plea inquiry, the military judge asked the appellant whether he learned where to buy marijuana from the book that had been seized from his wall locker. The appellant responded that he learned the source of marijuana from the man who ran the hotel in Amsterdam.

Prior to announcing the sentence, the military judge responded to a defense request that the appellant be given credit, in accordance with *United States v. Pierce*, 27 M.J. 367 (C.M.A.1989), for nonjudicial punishment for the same offense of using marijuana as the one before the court-martial. The military judge denied the request for *Pierce* credit, and then stated,

Now all of the legal and factual niceties aside, let me discuss the practical aspects of this so that there is no—there aren't a lot of legal gyrations later on. The accused received nonjudicial punishment for ingestion of marihuana. As I said there is a possibility that that resulted from the same ingestion for which he has been convicted in Specification 1. On the

other hand, the court-martial is not required to be naive. Prosecution Exhibit 2 is a marihuana pipe. We know that the use of marihuana which is alleged to have—well, of which the accused has been found guilty in Specification 1, took place in Amsterdam and was accomplished by rolling leaf marihuana into cigarettes. The accused testified that the pipe could be used for both leaf type marihuana and for hashish. In my experience over the last three years and probably 150 marihuana cases, the type of marihuana almost exclusively found in Germany is hashish, not leaf marihuana. Leaf marihuana in Germany is very rare. And in order to use hashish, a smoking device of some sort is required, either a pipe such as Prosecution Exhibit 2, some soldiers use a coke can and poke holes in it and fashion it into a smoking device. Leaf marihuana, in my experience, is almost always smoked by using cigarette papers and rolling it into what's called a joint or a roach. The obvious inference here is that this was not the accused's first experience with illegal drugs because this pipe was found with marihuana residue in it. I have not adjudged any punishment for the possession of this pipe with residue, although I certainly could, because that's covered in Specification 2. The obvious inference is that this was not the accused's first time.

After announcing the sentence and advising the appellant of his appellate rights, the military judge asked the appellant if he had any questions, and the appellant said,

Sir, I would just like to say that it may be a little late, but the pipe was never used later, obviously it was taken. I haven't used marihuana since. I would like to set the record straight. Maybe it won't do any good, I would just like that to go on record that I have not used marihuana since I had been busted, I was originally arrested.

The military judge responded by explaining,

Let me say that I did not assume that the pipe had been used later. I know it wasn't used later because it was seized on 4 March. The only thing that I said

about that was that it was obvious that your trip to Amsterdam is not the first time that you have been involved in illegal drug use.

We hold that the military judge erred. In the first place, the record is devoid of evidence that the appellant possessed or used marihuana prior to 3 March 1990. It is equally devoid of evidence that the appellant possessed the pipe or the book prior to 3 March 1990. The book is appended to the record and appears clean, uncreased, and virtually new. The sole basis for the military judge's conclusion that the appellant was involved with drugs prior to 3 March 1990 is the military judge's own experience with the types of marihuana commonly used in Germany, the customary methods of ingesting marihuana, and the usual purpose of a pipe of the type seized from the appellant's locker.

More importantly, the military judge erred by injecting his own specialized knowledge into the trial and becoming a *de facto* expert witness for the prosecution without being subjected to contradiction or cross-examination. The Court of Military Appeals and this court repeatedly have expressed concern about the "numerous statutory and constitutional questions" raised by a judge relying on his own specialized knowledge. *United States v. Conley*, 4 M.J. 327, 330 (C.M.A.1978); *United States v. Coleman*, 32 M.J. 508, 511 (A.C.M.R.1990). At the point where a military judge becomes a witness for the prosecution, he is disqualified. *United States v. Conley*, 4 M.J. at 329; *United States v. Jamison*, 18 M.J. 540, 544 (A.C.M.R.1984); Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 902(b) [hereinafter R.C.M.]. When a military judge is disqualified, all of his actions from that moment on are void. *United States v. Sherrod*, 26 M.J. 30, 33 (C.M.A.1988), *petition denied*, 28 M.J. 157 (C.M.A.1989); R.C.M. 902(a); *see generally United States v. Allen*, 31 M.J. 572, 600–601 (N.M.C.M.R.1990) (discusses disqualification of a military judge).

■ On the basis of the record before us, we find that the military judge became a *de facto* witness for the prosecution during the sentencing hearing. We hold that his disqualification was not waived by the failure of the trial defense counsel to challenge him on that specific basis. Finally, we hold that the sentencing proceedings are void.

We have considered the appellant's claim, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), that his counsel was ineffective, and we find that it is without merit. We need not address the remaining assignments of error in light of our holding that the sentencing proceedings are void.

The findings of guilty are affirmed. The sentencing proceedings are void. Another trial on the sentence only may be ordered by the same or a different convening authority.

Judge HAESSIG and Judge HAGAN concur.