**UNITED STATES, Appellee,**

v.

**Sergeant Willie BROWN, Jr., 155–48–2323, United States Army, Appellant.**

**ACMR 9000907.**

U.S. Army Court of Military Review.

28 Aug. 1991.

For Appellant: Lieutenant Colonel Russell S. Estey, JAGC, Captain Timothy P. Riley, JAGC, Captain Pamela J. Dominisse, JAGC, (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Maria C. Fernandez, JAGC, Captain Marcus A. Brinks, JAGC, Captain Donna L. Barlett, JAGC (on brief).

Before NAUGHTON, HOWELL and JOHNSTON, Appellate Military Judges.

## OPINION OF THE COURT

JOHNSTON, Judge:

The appellant, a sergeant with approximately twelve years of service, was tried by a military judge in a special court-martial. Contrary to his plea, he was convicted of a single specification of wrongful use of cocaine in violation of Article 112a, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 912a (Supp. V 1987). The convening authority approved the adjudged sentence of fifteen days' confinement and a bad-conduct discharge.

In reviewing the case we specified the following issue:

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT BY TAKING JUDICIAL NOTICE OF THE "FACTS" IN APPELLATE EXHIBIT III. *See United States v. Harper,* 32 M.J. 620 (A.C.M.R.1991); *United States v. Coleman,* 32 M.J. 508 (A.C.M.R.1990).

■ We have concluded that the military judge erred by taking judicial notice of portions of the contents of Appellate Exhibit III.[1]

### I.

Appellate Exhibit III contains the following items:

(1). A single-page request from the trial counsel that the military judge take judicial notice of the following "facts."

a. The drug cocaine is derived from the coca plant. When cocaine is inhaled or ingested into the human body, the body's metabolic process converts cocaine into various metabolites (break down particles), which are then excreted in the urine. The primary metabolite found in human urine after cocaine use is benzoylecgonine. Benzoylecgonine is not found naturally in the human body and benzoylecgonine has been found in the human body only after cocaine has been inhaled or ingested into the body.

b. Benzoylecgonine can be conclusively identified through a properly conducted radioimmunoassay (RIA) screening test followed by a gas chromatography/mass spectrometry (GC/MS) confirmatory test of a urine sample. The Air Force Drug Testing Laboratory at Brooks Air Force Base, Texas utilizes such a process.

c. All urine samples tested by the Brooks Air Force Drug Testing Laboratory which test at a level of 300 nanograms per milliliter (ng/ml) for benzoylecgonine are deemed positive. This 300 ng/ml screening level is established by the Department of Defense.

(2). A five-page affidavit from Dr. A. Vallon–Frank, Associate Chief, Forensics and Documentation Division, Air Force Drug Testing Laboratory (AFDTL), Brooks Air Force Base, Texas.

(3). Portions of a 1987 law review article entitled *Drug–Use Testing: Scientific Perspectives* by Kurt M. Dubowski,

---

1. We also note that the military judge erred in admitting portions of Defense Exhibit A. The thinly disguised non-scientific conjecture of a medical doctor that was created at the specific request of the accused as he prepared to go to trial does not qualify as a hearsay exception merely because it is contained in a medical record. The medical records in Defense Exhibit A were prepared for use at trial rather than for treatment purposes. Consequently they lack indicia of reliability and cannot qualify as business records or public records and reports. *See* S. Saltzburg, L. Schinasi, and D. Schlueter, *Military Rules of Evidence Manual* 797–802 (3d ed. 1991).

found in Volume II of the NOVA Law Review.

(4). An article by Major Wayne E. Anderson from The Army Lawyer, September, 1988, entitled *Judicial Notice in Urinalysis Cases.*

## II.

■ A fact that may be judicially noticed is one that is not subject to reasonable dispute in that it is either (1) generally known universally, locally, or in the area pertinent to the event, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Manual for Courts-Martial, United States, 1984, Mil.R.Evid. 201(b) [hereinafter Mil.R.Evid. 201(b) ]; *see* S. Saltzburg, L. Schinasi, and D. Schlueter, *Military Rules of Evidence Manual* 77 (3d ed. 1991).

■ The first two sentences in Appellate Exhibit III, paragraph "a," are proper subjects of judicial notice as facts that are not subject to reasonable dispute as they are generally known. The last two sentences in paragraph "a", the first sentence in paragraph "b" and the last sentence in paragraph "c" may be judicially noted as facts not subject to reasonable dispute provided the record of trial evidences compliance with Mil.R.Evid. 201. This means that counsel should provide the court with "necessary information" in the form of treatises, articles from scientific journals, and similar sources "whose accuracy cannot reasonably be questioned." Mil. R.Evid. 201(b). *See Harper, supra.*

■ The last sentence in paragraph "b" is not a proper subject for judicial notice as it suggests as "fact" that the Air Force Laboratory utilizes "properly conducted" RIA and GC/MS tests. While the Air Force Laboratory may indeed *attempt* in each and every case to utilize "properly conducted" tests, this is an adjudicative fact that is not the proper subject of judicial notice.

■ The first sentence in paragraph "c" is not a proper subject of judicial notice, as test results in a particular range may reflect a multitude of variables involving quality control deficiencies. Only *properly tested* samples *should be* subject to being categorized as "positive."

■ The affidavit by Dr. A. Vallon–Frank, cannot be considered for judicial notice as it contains many adjudicative facts that must be resolved by the factfinder. In addition, it does not qualify as a "source whose accuracy cannot reasonably be questioned" as it is not a document published in a reputable treatise or journal where the author's conclusions would be subjected to scrutiny and peer review within the community of experts in that particular discipline.

■ The scientific article by Professor Dubowski in the law journal also cannot be regarded as a "source whose accuracy cannot reasonably be questioned." We note that the complete article was not furnished to the military judge. Significantly, the extract supplied to the military judge by trial counsel did not include that portion of the article dealing with quality assurance and scientific accuracy. A military judge can hardly conclude that scientific facts are beyond dispute when the article supplied suggests that such facts are disputable when quality assurance problems are analyzed.

■ The article by Major Anderson is not a proper subject for judicial notice as it deals primarily with trial tactics and judicial theory rather than scientific matters subject to peer review. In taking judicial notice of adjudicative facts, a military judge should rely on primary sources (i.e. treatises and scientific journals) rather than summaries in law reviews or legal journals.

## III.

Having concluded that the military judge erred in taking judicial notice of certain facts contained in Appellate Exhibit III, we must decide whether the failure to raise a timely objection at trial waived the error.

■ Both *Harper* and *Coleman* concerned similar exhibits that this court de-

termined were improperly considered at trial. In each of those cases, however, trial defense counsel made a timely objection. In this case the civilian defense counsel specifically stated that he had no objection. No defense objection was made to Appellate Exhibit III at any time during the trial proceedings. Consequently, we hold that the appellant waived the error. Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 905(e) [hereinafter R.C.M.].

■ Assuming *arguendo* that the error concerning judicial notice was not waived, we find that the expert testimony presented at trial in rebuttal by the Government fulfilled the evidentiary mandate of *United States v. Murphy,* 23 M.J. 310 (C.M.A.1987). Furthermore, the rebuttal testimony rendered harmless any error caused by the improper judicial notice of portions of Appellate Exhibit III.

The findings of guilty and the sentence are affirmed.

Senior Judge NAUGHTON and Judge HOWELL concur.