UNITED STATES, Appellee,

v.

Isaac HUNT, Jr., Private, U.S. Army, Appellant.

No. 65,252.
CM 8902685.

U.S. Court of Military Appeals.

Argued April 23, 1991.

Decided Sept. 30, 1991.

For Appellant: *Captain Michael J. Coughlin* (argued); *Lieutenant Colonel Russell S. Estey* and *Captain Alan M. Boyd* (on brief); *Colonel Robert B. Kirby.*

For Appellee: *Captain Robert J. Walters* (argued); *Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J. Dell'Orto, Major Maria C. Fernandez, Captain Mark E. Frye* (on brief); *Major Martin D. Carpenter.*

*Opinion of the Court*

SULLIVAN, Chief Judge:

In August 1989, appellant was tried by a military judge sitting alone as a special court-martial at Fort Hood, Texas. Pursuant to his pleas, he was found guilty of a 4–day unauthorized absence, in violation of

Article 86, Uniform Code of Military Justice, 10 USC § 886. Contrary to his pleas, he was found guilty of wrongfully using cocaine, in violation of Article 112a, UCMJ, 10 USC § 912a. He was sentenced to a bad-conduct discharge, confinement and forfeiture of $250 pay per month for 3 months, and reduction to E–1. The Court of Military Review affirmed in a short-form opinion on May 16, 1990.

This Court specified review on the following question of law:

WHETHER A CHAIN OF CUSTODY, LABORATORY REPORT, AND JUDICIAL NOTICE ARE LEGALLY SUFFICIENT EVIDENCE TO PROVE THAT THE ACCUSED USED COCAINE.

We hold that the Government's proof in this case was legally defective, so appellant's conviction must be overturned. *United States v. Murphy*, 23 MJ 310 (CMA 1987); *United States v. Harper*, 22 MJ 157, 163 (CMA 1986); *see also United States v. Harper*, 32 MJ 620 (ACMR 1991); *United State v. Coleman*, 32 CMR 508 (ACMR 1990).

On March 29, 1989, appellant submitted a urine sample for testing to the Air Force Drug Testing Laboratory at Brooks Air Force Base, Texas. A report on the tests performed at the laboratory was admitted at trial. The cover letter to this report states:

19 Jun 1989

Test Results Report

To: Office of the Staff Judge Advocate
Ft Hood, TX 76544–5056

1. The urine specimen identified by Base Identification Number A001–6152–814, SSAN 304–78–2423 and Laboratory Accession Number 3–122–189, was tested for cocaine and/or its metabolites at the Air Force Drug Testing Laboratory (AFDTL). The specimen was tested by the "screen" and the "initial" radioimmunoassay procedures and determined presumptive positive for cocaine. The specimen was then confirmed positive by Gas Chromatography/Mass Spectrometry (GC/MS) for the cocaine metabolite ben-

zoylecgonine at or above the DOD cutoff level of 150 ng/ml.

2. I hereby certify that I am a Document Custodian for the Air Force Drug Testing Laboratory, Brooks AFB, Texas, and that all attached documents are true and accurate copies of the documents maintained at the AFDTL in the regular course of business as a forensic laboratory and as required by the provisions of AFR 160–23. The attached documents are provided in response to your request for information pertaining to the testing of the subject specimen.

The prosecution also called three witnesses who established the chain of custody from the time of submission of the sample until the time of its admission at trial. The prosecution also requested over defense objection that the military judge take judicial notice of certain purported facts.

The military judge, after submission of materials supporting the prosecution's request and argument, took the requested judicial notice of the following:

a. The drug cocaine is derived from the coca plant. When cocaine is inhaled or ingested into the human body, the body's metabolic process converts cocaine into various metabolites (breakdown particles), which are then excreted in urine. The primary metabolite found in human urine after cocaine use is benzoylecgonine. Benzoylecgonine is not naturally produced by the human body or any other substance other than cocaine.

b. Benzoylecgonine can be conclusively identified through a properly conducted radioimmunoassay (RIA) screening test followed by a gas chromatography/mass spectrometry (GC/MS) confirmatory test of a urine sample. The Air Force Drug Testing Laboratory at Brooks Air Force Base, Texas utilizes the radioimmunoassay (RIA) screening test followed by a gas chromatography/mass spectrometry (GS/MS) confirmatory test.

This was the prosecution's case, and the accused took the stand and denied knowing use of cocaine.

The parties to this appeal have largely devoted their attention to the particular question whether the judge properly took judicial notice of the above-quoted statement of facts. *See* Mil.R.Evid. 201, Manual for Courts–Martial, United States, 1984. In this case, unlike *United States v. Murphy*, 33 MJ 248 (CMA 1991), the defense made a proper objection preserving this issue for review. Nevertheless, the specified issue in this case embraces a larger question. Assuming judicial notice was properly taken in this case, was the Government's case in its entirety sufficient to show *wrongful* cocaine use? *United States v. Murphy*, 23 MJ 310 (CMA 1987). *See United States v. Harper*, 22 MJ 157 (CMA 1986).

■■■ The burden is on the prosecution to prove beyond a reasonable doubt that an accused servicemember wrongfully used cocaine, in violation of Article 112a. *See United States v. Harper, supra* at 162; *United States v. Ford*, 23 MJ 331, 332 (CMA 1987). If scientific-test evidence is used by the prosecution to meet this burden, it must provide a rational basis for understanding this evidence. *United States v. Murphy, supra. Cf. United States v. Day*, 20 MJ 213 (CMA 1985). If the prosecution fails to offer sufficient expert evidence from which the members may rationally find wrongful use, its case is defective, and a conviction thereon may not stand. *United States v. Murphy, supra.* The defense's right to attack the prosecution's case on these matters (*see United States v. Van Horn*, 26 MJ 434, 438 (CMA 1988)) does not relieve the prosecution of its burden to produce understandable and sufficient evidence in the first instance. *See United States v. Ford, supra* at 336; *see* RCM 920(e)(5)(D), Manual, *supra.*[1]

In *United States v. Harper, supra* at 163, this Court noted that expert testimony was required to permit a court-martial to infer wrongful cocaine use. Judge Cox said:

> [T]he prosecution introduced sufficient evidence from which a factfinder could find beyond a reasonable doubt that appellant used marihuana. On this basis, the prosecution could also ask the factfinder to infer that the use was wrongful. Para. 213*g* (5), Manual [for Courts–Martial, United States, 1969 (Revised edition) ]. *See generally McCormick on Evidence* § 344, p. 973 (E. Cleary 3d ed.1984). *To persuade the court to draw this inference, expert testimony was again offered by the prosecution. Doctor Jain testified that the nanogram readings on the three samples ruled out the possibility of passive inhalation. Moreover, he testified that these particular results indicated that the user at some time experienced the physical and psychological effects of the drug.* Finally, the prosecution evidenced the use of marihuana on three separate occasions. Clearly, the repetition of such an act with these recognizable effects suggests appellant knew what he was doing. *See* Mil.R.Evid. 404(b), [1969] Manual, *supra;* II Wigmore, Evidence § 368 (Chadbourn rev.1979). In this context we hold there was sufficient *prima facie* evidence presented for the military judge to find beyond a reasonable doubt that appellant knowingly and wrongfully used marihuana.

(Emphasis added.)

■■■ No evidence of the actual scientific tests conducted on appellant's urine sample was admitted in this case.[2] *Cf. United States v. Harper, supra.* Moreover, no expert testimony explaining this testing data for the purpose of showing wrongful-

---

1. We see no inconsistency in the defense's waiving the requirements for admission of a laboratory report (*see* Mil.R.Evid. 103, Manual for Courts–Martial, United States, 1984), but nonetheless asserting that this report by itself is not sufficient to show his guilt. *See United States v. Murphy*, 23 MJ 310 (CMA 1987). *Cf. United*

*States v. Broadnax*, 23 MJ 389 (CMA 1987). *See generally* Zeese, *The Use and Abuse of Drug Tests*, 5 Criminal Justice 2, 5–6 (1991).

2. The testing data was a part of an appellate exhibit which the judge did not judicially note.

ness was admitted in this case. *See generally United States v. Murphy, supra.* Accordingly, the Government did not present a constitutionally sufficient[3] case to prove wrongful use of cocaine. *United States v. Ford, supra* at 332–37; *see generally* P. Giannelli and E. Imwinkelried, *Scientific Evidence* § 23–5 at 1008–11 (1986). *Contra* Anderson, *Judicial Notice in Urinalysis Cases,* The Army Lawyer 19, 25–26 (Dept. of the Army Pamphlet 27–50–189 (1988)).

**3.** The few Federal cases dealing with admissibility of chemical-analysis reports in criminal cases have not addressed sufficiency questions. *See United States v. Baker,* 855 F.2d 1353, 1359–

The decision of the United States Army Court of Military Review is reversed as to the Charge and its specification and the sentence. The findings of guilty thereon and the sentence are set aside. The Charge and its specification are dismissed. The record of trial is returned to the Judge Advocate General of the Army. A rehearing on sentence based on the Additional Charge may be ordered.

Judge COX and Senior Judge EVERETT concur.

60 (8th Cir.1988); *United States v. Rodriguez-Pando,* 841 F.2d 1014, 1018 (10th Cir.1988). *See generally Thomas v. Hogan,* 308 F.2d 355 (4th Cir.1962).